# IN THE COURT OF APPEALS OF IOWA

No. 15-0176
Filed October 14, 2015

**IN THE INTEREST OF W.N.,**
   **Minor Child,**

**T.N., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Lucas County, Martha Mertz, Judge.

A mother appeals the district court's order dismissing her petition to terminate the father's parental rights. **AFFIRMED.**

Jenna K. Lain of The Law Office of Jenna K. Lain, P.L.L.C., Corydon, for appellant.

Bryan J. Tingle, Des Moines, for appellee.

Dawn M. Bowman, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother appeals the district court's order dismissing her petition to terminate the father's parental rights under Iowa Code section 600A.8(3) (2013). She claims she proved the statutory grounds for abandonment by clear and convincing evidence and the district court erred in considering the father's subjective intent. She further asserts that termination of the father's parental rights was in the child's best interests. We affirm.

I.      **Background Facts and Proceedings**

The parties have one child together, W.N., born in May 2013. Although paternity of the child had not been established at the time of the termination hearing in December 2014, the parties agreed that Ray is the biological father of W.N. Ray is the father of one other child from a prior marriage, C.S., with whom he has visitation every other weekend and additional parenting time during the summer.

Ray and the mother, Tamara, briefly dated and lived together, ending their relationship shortly after finding out Tamara was pregnant with W.N. Ray did not maintain contact with Tamara while she was pregnant and was not present for W.N.'s birth. Ray first met W.N. when he was three days old. Since birth, W.N. has been in his mother's sole physical care.

Shortly after W.N.'s birth in May 2013, the State filed a child-in-need-of-assistance petition unrelated to this action.[1] During the CINA case from May until

---

[1] At W.N.'s birth, his umbilical cord blood tested positive for cocaine. Following the positive cord blood test, Tamara completed drug screenings, which came back negative. After a contested adjudicatory hearing on July 29, 2013, the juvenile court dismissed the

August 2013, Ray had regular visits with W.N. in a supervised setting approximately once a week for twenty minutes. Ray did not have visits with W.N. in September or October 2013, and it is unclear whether he saw W.N. during November or December 2013, but he did not have any scheduled visits with him in those two months. Ray admitted he resisted many of Tamara's visitation proposals, but denied he intended to abandon W.N. Throughout this time, Tamara actively fostered relationships between W.N. and Ray's family, including his mother and father who were both divorced and remarried, and Ray's other son, C.S. Ray last saw W.N. in July 2014 when Tamara took W.N. to see Ray and his family during a camping trip.

On September 12, 2014, Ray filed an action to establish paternity of W.N. On September 19, 2014, Tamara responded with a petition to terminate Ray's parental rights with respect to W.N., only sixteen months after W.N.'s birth. She alleged Ray abandoned W.N. within the meaning of Iowa Code section 600A.8(3)(b). On October 2, 2014, the parties participated in a mediation regarding temporary matters in Ray's paternity action that resulted in a mediation agreement. The mediation agreement required both Tamara and Ray to complete a drug test and Ray to complete a substance abuse evaluation, following which Ray would have weekly, thirty-minute visits with W.N. supervised by Tamara's fiancé and a Parents as Teachers professional on alternating weeks. Ray completed the requirements within a week but failed to provide proof

---

CINA case on August 30, 2013.

of completion and did not exercise visits with W.N. between the time of the mediation in October and the hearing in December 2014.

The district court combined the termination-of-parental-rights hearing and hearing on temporary matters, which were held on December 9 and 10, 2014. At the hearing, the guardian ad litem (GAL) recommended that Ray's parental rights as to W.N. be terminated. She testified that she had significant concerns regarding his ability to parent W.N. because of his marijuana usage. She also noted Ray's lack of follow-through with the mediation agreement, his failure to participate in visits with W.N. in the weeks leading up to the trial, and his lack of financial support for W.N.

Tamara testified that she did not prevent Ray from having visits with W.N. but instead required that his visits be supervised and that Ray be sober during the visits. Her concern arose because Ray regularly used marijuana to self-medicate for lingering physical pain and mental issues, including suicidal thoughts and ideations, he suffered as a result of a motor vehicle accident in which he was seriously injured in 2011. Ray admitted he smoked marijuana the morning of the termination hearing.

Both parties testified to the amount of financial support Ray had provided for W.N. From May until October 2013, Ray voluntarily provided $100 a week to Tamara for W.N.'s support. From October until December 2013, the support decreased until Ray made his final support payment on December 2, 2013. His total voluntary payments to Tamara for W.N.'s support totaled $1850. Ray

admitted he did not contribute to W.N.'s support during 2014, though he continued to pay child support for his other child, C.S.[2]

On January 15, 2015, the district court entered a ruling dismissing Tamara's petition and entered a temporary order in the paternity case allowing visitation and ordering child support. In its order, the district court concluded that Ray did not abandon W.N. within the meaning of section 600A.8. It found that Ray did not intend to abandon W.N., rather he intended to avoid Tamara's control, and both parties contributed to Ray's lack of contact with W.N. following the dismissal of the CINA case. The court further found that termination of Ray's parental rights was not in W.N.'s best interests. It recognized "Ray's ability to provide support, his parenting abilities, and the potential detriment to W.N.[, namely the termination of the relationship between W.N. and his extended paternal family,] in terminating Ray's parental rights." This appeal followed.

## II.    Standard of Review

We review private termination proceedings de novo.[3] *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We give weight to the district court's factual findings, especially those concerning witness credibility, but are not bound by them. Iowa R. App P. 6.904(3)(g).

---

[2]  As the district court noted, there has never been a court order requiring Ray to contribute to W.N.'s support as there has been for C.S.

[3]  The father failed to file a brief. "On the failure of the appellee to file a brief, the appellant is not entitled to a reversal as a matter of right, but the court may, within its discretion, handle the matter in a manner most consonant with justice and its own convenience." *Bowen v. Kaplan*, 237 N.W.2d 799, 801 (Iowa 1976) (internal quotation marks omitted). Ray's failure to file a brief does not alter our duty to conduct a de novo review.

### III.    Analysis

On appeal, the mother argues that a parent's "intention to abandon" is no longer a statutory element of Iowa Code chapter 600A and the district court erred in considering the father's subjective intent in its statutory analysis. Section 600A.2(19) defines "[t]o abandon a minor child" as when "a parent . . . rejects the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(19) (2013). Thus, the parental mental state now is based on the parent's conduct in rejecting parental duties rather than the intent to abandon. *See id.* Still, chapter 600A does not prohibit a district court from ever considering a parent's subjective intent in making a determination of whether the parent has abandoned his or her child, but instead prohibits a district court from basing its decision solely on the parent's subjective intent without considering that parent's acts in regards to the parent-child relationship. *See id.*; *see also id.* § 600A.8(3)(c).

To terminate parental rights for abandonment under section 600A.8(3)(b), the petitioning party must show the child is at least six months old at the time of the termination hearing and the parent for whom termination is sought has failed to maintain "substantial and continuous or repeated contact with the child" by contributing to the child's financial support in "a reasonable amount, according to the parent's means." Iowa Code § 600A.8(3)(b). The petitioning parent must also show the other parent has failed to (1) "visit[] the child at least monthly when

physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child"; (2) have "regular communication with the child or with the person having the care or custody of the child," when unable to visit the child; or (3) live openly with the child for six months within the last year. *Id.* A parent's subjective intent, unsupported by these acts, does not preclude a determination the parent has abandoned the child. *Id.* § 600A.8(3)(c).

Ray voluntarily provided financial support for W.N. for the first several months of his life totaling $1850. Although Ray continued to contribute $100 per month to the support of his older son, and thus likely could have continued to contribute to W.N.'s support, he was not required to do so by court order. Ray also visited W.N. regularly for the first few months of his life. And although he only saw him a handful of times following the dismissal of the CINA case, he visited with him in July 2014—only two months before Tamara filed her petition.

Eventually, Ray believed it best to pursue court action to obtain a set visitation schedule and filed a paternity action. Tamara responded with a petition to terminate his parental rights. Although Tamara believed she was acting in her child's best interests by restricting visits between Ray and W.N. to occur only when Ray was supervised, we agree with the district court that her actions discouraged contact between Ray and W.N. and she contributed to the lack of contact between Ray and W.N. Further, while we find it concerning that Ray did not visit with W.N. between the time of the mediation and the termination hearing, Ray testified that he did not believe he could visit with W.N. because he had not received the paperwork to prove he had completed his drug test and substance

abuse evaluation as required by the mediation agreement. Ray expressed that he did not intend to abandon W.N., and his acts of voluntarily contributing to W.N.'s support and visiting with him, support his intention. Thus, upon our review of the record, we agree with the district court and find Tamara did not prove by clear and convincing evidence Ray abandoned W.N. *Id.* § 600A.8(3).

Because we find that Tamara did not prove by clear and convincing evidence that Ray abandoned W.N., we need not examine whether termination of Ray's parental rights is in W.N.'s best interests. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). Accordingly, upon our de novo review, we affirm the district court's order dismissing her petition.

**AFFIRMED.**