# IN THE COURT OF APPEALS OF IOWA

No. 15-1473
Filed March 9, 2016

**IN THE INTEREST OF L.M.,**
**Minor Child,**

**J.S., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A father appeals the juvenile court's termination of his parental rights in a private termination action. **AFFIRMED.**

William P. Baresel of Prichard Law Office, P.C., Charles City, for appellant.

Jesse M. Marzen of Marzen Law Office, P.L.L.C., Waverly, for the appellee mother.

Richard N. Tompkins, Jr. of Tompkins Law Office, Mason City, guardian ad litem for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A father appeals the juvenile court's termination of his parental rights in this private termination action. We find there is clear and convincing evidence in the record to show the father abandoned the child within the meaning of Iowa Code section 600A.8(3) (2015) and find termination of the father's rights is in the child's best interests. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

J.S. and A.M. are the parents of L.M., who was born in 2005. The parties were never married. On August 15, 2008, the parties entered into a stipulation placing the child in the physical care of the mother, A.M. J.S. had little, if any, prior contact with L.M. The parties agreed after a gradual period of introduction, J.S. would have liberal visitation with the child. The paternity decree also required J.S. to make child support payments of $330 per month.

At some point, J.S. married Kerry. Visitation was coordinated between A.M. and Kerry, and J.S. and Kerry had regular visitation with the child while they lived in Iowa. When J.S. and Kerry moved to South Dakota, then Oklahoma, visitation decreased due to the distance between the parties. During a weekend visitation in April 2013, J.S. told L.M. he and Kerry were getting divorced.

J.S. had visitation with L.M. in Oklahoma for two weeks in July 2013. A.M. testified J.S. called her toward the end of his visitation and told her he was going to keep L.M. for a longer period of time. J.S.'s father and stepmother drove to Oklahoma to pick up the child and found he had a large second-degree burn on his leg, which he received while in the care of a babysitter.

Due to A.M.'s concerns about the child's safety, she filed a petition to modify the paternity decree. J.S. did not respond to the petition and was found to be in default. The court modified the decree on November 20, 2013, to provide J.S. would have visitation for four hours each month supervised by Holly Janssen or another person designated by A.M. until J.S. completed "suitable parenting classes," at which time regular visitation would begin again. J.S. never contacted Janssen to schedule supervised visits.

J.S. had no contact with L.M. until September 2014, when Kerry brought L.M. to the wedding of J.S.'s brother, knowing J.S. would also be present. J.S. and L.M. spent time together during the day. By the evening, however, J.S. became intoxicated and, in the presence of L.M., began yelling insults about Kerry and her recently deceased father. This was upsetting to L.M., who continues to maintain a close relationship with Kerry. Kerry, despite the fact she is not a relative of L.M., has continued to have a relationship with him and exercises regular visitation.

J.S. completed a four-hour class, Children Cope with Divorce, on September 27, 2014. He contacted A.M. twice in November 2014 seeking visitation, but she stated his visits needed to be supervised and they were unable to complete arrangements. J.S. dropped in unannounced at A.M.'s home on Christmas in 2014. He had a short, five-minute visit with L.M. and gave him a present.

In early 2015, J.S. sent A.M. a letter stating he had completed parenting classes and wanted to resume regular visitation beginning in April. A.M.

responded through her attorney, stating visitation would remain supervised until J.S. provided proof he had completed parenting classes. J.S. has had no further visitation with L.M.

On May 8, 2015, A.M. filed a petition for termination of J.S.'s parental rights on the ground of abandonment, pursuant to section 600A.8(3). The juvenile court appointed a guardian ad litem (GAL), who submitted a report recommending termination of J.S.'s parental rights. At the termination hearing, J.S. testified he wanted to continue to have a relationship with L.M., but A.M. never responded to his telephone calls or texts, preventing him from setting up visitation. Evidence was presented to show J.S. was currently $3737 in arrears on his child support obligation.

The juvenile court entered an order on August 18, 2015, terminating J.S.'s parental rights. The court found the evidence supported a finding J.S. had made very little effort to exercise his visitation rights and had abandoned L.M. in the legal sense. The court stated, "[J.S.] has had very limited contact with [L.M.], by his own choice and due in large part to wanting to be a parent only when and where he feels like it. [L.M.] deserves to have a dad who doesn't appear and disappear on a whim." J.S. appeals the decision terminating his parental rights.

## II.    Standard of Review

Our review in matters pertaining to termination of parental rights under Iowa Code chapter 600A is de novo. *In re D.E.E.*, 472 N.W.2d 628, 629 (Iowa Ct. App. 1991). In cases in equity, we give weight to the factual findings of the district court, especially considering the credibility of witnesses, but are not

bound by them.  Iowa R. App P. 6.904(3)(g).  In termination proceedings, our paramount consideration is the best interests of the child.  Iowa Code § 600A.1.

### III.    GAL Report

J.S. claims the report of the GAL should be given little to no weight because the GAL only received information from A.M.  The GAL did not contact J.S. and stated he believed J.S. should have contacted him.  Due to the fact the GAL did not receive information from both parties, on our de novo review we do not consider the report.  *See In re Mann*, 293 N.W.2d 185, 190 (Iowa 1980) (noting the court would consider the report of a counselor "for what it is worth, taking into account its hearsay nature").

### IV.    Abandonment

J.S. claims there is not clear and convincing evidence in the record to support a finding he abandoned L.M. within the meaning of section 600A.8(3).  He states he tried to have contact with the child but was blocked by A.M. and finally he just gave up.  He claims A.M. was not a credible witness.

Section 600A.8(3)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1)    Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2)    Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.
>
> The legislature has defined the phrase "to abandon a minor child" to mean
>
> a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19). "Parental responsibility demands 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (citation omitted). Where a parent having physical care of the child has prevented the other parent from exercising visitation, the non-custodial parent is required to maintain regular communication with the child or the child's custodian. Iowa Code § 600A.8(3)(b)(2); *G.A.*, 826 N.W.2d at 130.

The evidence showed J.S. had very little or no contact with L.M. from the time he was born in 2005 until the paternity decree was issued in August 2008. We note J.S. did not take any action seeking visitation until A.M. requested the payment of child support. Thereafter, J.S. exercised regular visitation for a period of time, mostly at the initiation of Kerry. In the two years after J.S. exercised his two-week visitation with L.M. in July 2013, J.S. has seen L.M. only twice—once at J.S.'s brother's wedding where J.S. became intoxicated in the presence of L.M., and once during an unannounced drop-in visit on Christmas 2014.

Regarding J.S.'s claims he had attempted to contact A.M. but she would not return his calls or texts, the juvenile court, which was able to observe the witnesses, stated it did not believe A.M. had been unresponsive to J.S. nor that J.S. had made the attempts he claimed. The court found J.S.'s "testimony conflicted with that of the other witnesses, and in many respects with common sense."

We conclude the evidence shows J.S. has not visited the child or maintained regular communication with the child, or with A.M., who had physical care of the child. J.S. made only a marginal effort to keep in regular communication with the child. J.S. has not engaged in 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *See G.A.*, 826 N.W.2d at 130 (citation omitted). We agree with the juvenile court's finding there is clear and convincing evidence J.S. abandoned L.M. under section 600A.8(3).

### V.      Best Interests

J.S. claims termination of his parental rights is not in the best interest of L.M. He states it should not be easier for a parent to terminate the parental rights of another parent than to obtain sole legal custody of a child. This action was brought pursuant to chapter 600A, and our review is to determine whether termination is proper under the statutory guidelines.

Our paramount consideration in termination proceedings under chapter 600A is the best interests of the child. Iowa Code § 600A.1. The statute provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of

being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

*Id.*

We determine termination of J.S.'s parental rights is in the best interest of the child. J.S. has had very limited contact with L.M. since July 2013. As the juvenile court found, the natural result of this is L.M. has no relationship with J.S. A.M. testified she was planning to marry and her fiancé was interested in adopting L.M.

We affirm the decision of the juvenile court.

**AFFIRMED.**