**IN THE COURT OF APPEALS OF IOWA**

No. 15-1865
Filed April 27, 2016

**IN THE INTEREST OF D.H., G.H., and S.H.,**
**Minor Children,**

**E.W., Mother,**
 Petitioner-Appellee,

**D.H., Father,**
 Respondent-Appellant.
_____

 Appeal from the Iowa District Court for Monona County, Timothy Jarman,

District Associate Judge.

 The father appeals the termination of his parental rights to his children.

**AFFIRMED.**

 Zachary S. Hindman of Mayne, Arneson, Hindeman, Hisey & Daane,

Sioux City, for appellant father.

 Maxine M. Buckmeier, Sioux City, for appellee mother.

 David L. Gill, Sioux City, guardian ad litem for minor children.

 Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**PER CURIAM.**

The district court terminated the father's parental rights to these three children pursuant to Iowa Code sections 600A.8(3)(b) (abandonment) and 600A.8(4) (failure to provide financial support without good cause) (2013). The father appeals, contending his lack of contact with his children was not willful but rather a result of his mental illness for which he cannot be held responsible. The record does not support his claim and, therefore, we affirm.

A decision to terminate must be based on clear and convincing evidence. Iowa Code § 600A.8. The parent petitioning for termination has the burden of proof. *See In re G.A.*, 826 N.W.2d 125, 129 (Iowa Ct. App. 2012). If the child is six months of age or older,

> a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child . . . .

Iowa Code § 600A.8(3)(b).

"Parental responsibility demands 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *G.A.*, 826 N.W.2d at 130 (citation omitted).

We review termination proceedings under chapter 600A de novo. *Id.* at 127. We give weight to the factual findings of the juvenile court, particularly with regard to witness credibility, but we are not bound by them. *Id.* When

interpreting chapter 600A, the best interests of the child involved is "the paramount consideration," but we also give "due consideration" to the interests of the child's parents. Iowa Code § 600A.1.

Here, the mother proved by clear and convincing evidence that the father has not seen his children since February 2012 when he went to prison for having hired a person to shoot him in the leg in an attempt to gain sympathy from the children's mother. A therapist, Dr. Angela Stokes, was involved to facilitate maintaining a relationship between the father and children. She attempted to set up telephone calls with the father and children in January 2013 while he was incarcerated. However, the father could not abide by the structure and rules required, and his children were traumatized by the contact. He wrote one letter to the children, to which the children reacted negatively. Dr. Stokes continued to counsel the children after these failed contacts.

The father reported to Dr. Stokes he had multiple personality disorder, bipolar disorder, schizophrenia, and other diagnoses. However, the prison psychologist informed Dr. Stokes that the father had been diagnosed with antisocial personality disorder.

The father was released from prison in November 2013. The parties mediated appropriate steps to be taken before the father and children could begin visits, which included the father's continued participation in mental health treatment. The father did attend a few sessions with Greg Nooney. Nooney reported to Dr. Stokes that the father had depression, attention deficit hyperactivity disorder, and posttraumatic stress disorder. Dr. Stokes reviewed the father's medical records and found he had also been diagnosed with

Munchausen's syndrome in 2009. The father ceased attending therapy sessions and was discharged by Nooney in October 2014.

The father returned to prison for probation violations in February 2015. In May 2015, the mother filed an application to terminate the father's parental rights to his three children, asserting he had not seen his children since 2012, had not maintained contact with the children, and had not financially supported the children despite a court order that he pay $100 per month in child support. One guardian ad litem (GAL) was appointed to represent the father and another to represent the children. At the trial held in July and August 2015, the mother presented evidence that she had not prevented the father from seeing the children and that he had failed to contact them to the extent feasible under the circumstances. She also established he paid nothing in child support in 2012, 2013, or 2015, and had paid $210 in 2014. The children's GAL recommended termination of the father's rights.

The father claims that his lack of contact is due to mental illness. His medical records indicate he has antisocial personality disorder and may have Munchausen's syndrome, which is manifested by a person lying to gain personal benefit. However, there is no evidence that either antisocial personality disorder or Munchausen prevent him from following through with attending mental health treatment—which he testified he knew he had to do to attempt to reunify with his children. He testified he did not follow through because, when released from prison in 2013, he started seeing a woman and "went with the wrong crowd." We agree with the trial court's assessment:

> The expert testimony establishes that [the father]'s behavior has been detrimental to the children. [The father] has serious emotional and psychological problems which he has failed to address over the years. His very recent attempt to return to therapy is too little and too late. Additional attempts at contact between [the father] and the children will result in further serious harm to the children.

Another complaint of the father is that the mother was to blame for his failure to exercise visitation. Even if we assume the mother may have some blame, we decline to excuse the father on this basis. In November 2013, the mother participated in mediation with the father relative to visitation and they subsequently entered into a visitation stipulation. Unfortunately, the father failed to live up to his counseling obligations under the agreement. Rather, the father's very limited contact with the children was hindered by his imprisonment, failure to complete mental health counseling, and the fact—he admitted—that he was running around with the "wrong crowd."

The father also asserts he could not pay child support because he was incarcerated and had no income. He claims he was disabled. The father is a truck driver and testified he was able to obtain funds to finance a truck but could not find money to support his children. And he had some limited income while in prison, none of which he provided to the children. The mother proved by clear and convincing evidence that the father failed to engage in "affirmative parenting to the extent it [was] practicable and feasible under the circumstances." *See G.A.*, 826 N.W.2d at 130 (citation omitted). The voluntary failure of a parent to maintain regular communication can justify termination. *See In re T.B.*, No. 14-1984, 2016 WL 530990, at *7 (Iowa Ct. App. Feb. 10, 2016) ("Since at least October 2011, neither parent has visited T.B. or M.C., and even if we assume

that their interest in visitation was frustrated by the guardian's actions, both the father and mother fail to satisfy the alternative means of regular communication with either the children or the children's guardian."); *In re A.M.M.*, No. 13-0627, 2014 WL 3928877, at *2 (Iowa Ct. App. Aug. 13, 2014) (finding that a mother's lack of contact with child for sixteen months and lack of contact with custodial father for twelve months prior to termination hearing was "only a marginal effort, at best, to maintain regular communication" and justified termination, even assuming that father had prevented her from having visitation with child). A showing of abandonment does not require total desertion; feeble contacts can also demonstrate abandonment. *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993).

The father also maintains that termination of his parental rights is not in the children's best interests. Our paramount consideration in termination proceedings under chapter 600A is the best interests of the child. *See* Iowa Code § 600A.1 ("In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, . . . the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life."). The district court determined that maintaining the father/child relationship was affirmatively *harmful* to the children, and the record supports that finding.

Because the mother has, by clear and convincing evidence, proved the father abandoned his children in the statutory sense and that termination of his parental rights is in the children's best interests, we affirm.

**AFFIRMED.**