# IN THE COURT OF APPEALS OF IOWA

No. 18-1022
Filed December 5, 2018

**IN THE INTEREST OF K.C.,**
**Minor Child,**

**B.L., Mother,**
     Petitioner-Appellant,

**T.L., Father,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Delaware County, Linnea M.N. Nicol, District Associate Judge.

A mother appeals the district court's decision denying her petition seeking to terminate the father's parental rights. **AFFIRMED.**

Justin Vorwald of Ehrhardt, Gnagy, McCorkindale, & Vorwald, Elkader, for appellant.

Cory R. Gonzales of Law Firm of Cory R. Gonzales, PLLC, Strawberry Point, for appellee.

Kimberly S. Lange of Kimberly S. Lange Law Office, Edgewood, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A mother appeals the district court's decision denying her petition seeking to terminate the father's parental rights. We find the court properly determined the mother did not meet her burden to show by clear and convincing evidence the father had abandoned the child. Due to our finding on this issue, we do not consider whether termination was in the child's best interests. We affirm the district court's decision.

### I.      Background Facts & Proceedings

B.L., mother, and T.L., father, are the parents of a child, K.C., born in 2007. The parents, who were both then teenagers, lived together for a short period of time before the child was born, but they never married. During their relationship the parents used illegal drugs. B.L.'s mother told B.L. she could no longer have contact with her siblings if she continued her relationship with T.L. B.L. broke off her relationship with T.L. and moved home with her parents. T.L. testified he felt B.L. did not want to be seen with him after that. The father's sister testified B.L.'s family did not like the father's family.

The father had four visits with the child while K.C. was an infant, which the father requested. The mother stopped all visitation between the father and child in March 2008 because she believed he was using illegal drugs. There has been no subsequent visitation.

In November 2007, through the Child Support Recovery Unit, the father was ordered to pay child support of $184 per month. In April 2012, the father's child support obligation was reduced to ten dollars per month. The father consistently

made child support payments, although he did not always pay the full amount due every month.

The father was a passenger in a vehicle involved in a serious car accident in 2008. The father suffered a head injury and was placed in a medically-induced coma for more than a week. He stated it took him a "couple years to recover." T.L.'s father testified T.L. still has some problems with short-term memory loss. On March 1, 2011, the father was placed on probation due to charges of conspiring to manufacture methamphetamine and possession of ephedrine as a precursor. On October 3, 2011, the father pled guilty to a charge of manufacturing methamphetamine and was sentenced to a term of imprisonment not to exceed twenty-five years. He testified he was released from prison in May 2013 and was on parole at the time of the termination trial.

Since the mother cut off the father's contact with the child in March 2008, the father stated he made between fifteen to twenty attempts to contact the mother to have visits with the child. He sent two letters to the mother, which she stated she received but made no response.[1] The father attempted to contact the mother through Facebook, and again she made no response. When T.L.'s mother attempted to contact B.L. through Facebook, B.L. sent her some pictures but did not provide her with any information. T.L.'s sister saw B.L. at a convenience store and stated B.L. told her "she was going to do everything she could to keep [K.C.] away from [T.L.]" The sister also tried to arrange contact with the child through a coworker, who was a friend of the mother's, but the mother refused. T.L., his

---

[1] The letters were sent to "General Delivery" at the town where B.L. was living, as T.L. did not know B.L.'s address.

mother, his father, and his sister all testified they did not know B.L.'s address, telephone number, or any other way to contact her, except through Facebook; for a period of time B.L. blocked all of T.L.'s family on Facebook.

The mother testified she never told the father her address or telephone number. She stated she lived in five different towns since the child's birth. The mother stated the father could have tried to contact her through her parents, who lived at the same address and had the same telephone number for many years. The father testified he tried to call B.L's parents one time and did not get through to them. He stated he did not try again because he believed B.L.'s parents would not talk to him.

The mother married Bl.L. in September 2016. On December 5, 2017, she filed a petition to terminate the father's parental rights on the ground of abandonment under Iowa Code section 600A.8(3)(b) (2017). She pointed out the father has not had contact with the child since March 2008. The mother and her husband stated they wanted the husband to be able to adopt K.C.

At the termination hearing, the father testified he turned his life around when he got out of prison in 2013. He currently had a job and was living with his parents. The father had physical care of a younger child from a different relationship. He also has visitation with an older child. The father stated he wanted to have contact with K.C. and wanted his other children to have contact with the child. The father testified he was "a little behind on my back child support," but stated he hoped to catch up by applying his tax refund. He stated he did not have the financial resources to take legal action so he could have contact with the child. The father's

parents and sister testified they wanted to be able to have a relationship with the child.

The district court denied the mother's request to terminate the father's parental rights. The court found, "While the amount of child support that was paid is small, the record of child support payments is that the father has paid child support every year of this child's life." The court determined the father had made an attempt to regularly meet his child support obligation. The court also found:

> It is uncontested that all of the father's attempts to contact the mother to have visitation with the child were ignored or not responded to by the mother. The mother in her conversation with the child's aunt, . . . expressed that she did not intend for [K.C.] to have contact with [T.L.] or his family because of his prior drug use.
> While the mother testified that she felt withholding contact was justified due to [T.L.]'s prior drug use, it is significant to the Court that the mother's demeanor throughout her testimony from the witness stand was looking down at the floor and fidgeting with her hands. The mother was unable or unwilling to look the parties in the eye during her testimony. Listening to the testimony of the mother and observing her in court, the Court finds that she obstructed the father's attempts to have contact with his child. Could the father have made more efforts? Yes. The Court concludes that no efforts made by the father would have resulted in the mother responding to him short of legal action, and it is clear to this Court that the father could not afford to initiate legal action to gain visitation. The Court finds the mother prevented the father from having contact with his child. The father made significant child support payments. The Court does not find that the [mother] has shown by clear and convincing evidence the ground of abandonment.

Because the court found the mother had not proven the ground of abandonment, the court did not address the issue of the child's best interests. The mother appeals the court's decision.

## II. Standard of Review

Our review in private termination proceedings is de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We give deference to the factual findings

of the juvenile court, especially those relating to the credibility of witnesses, but we are not bound by the court's findings. *In re R.K.B.,* 572 N.W.2d 600, 601 (Iowa 1998). The grounds for termination of a parent's rights must be established by clear and convincing evidence. *In re C.A.V.*, 787 N.W.2d 96, 100 (Iowa Ct. App. 2010). Our primary concern in termination proceedings is the best interests of the child. Iowa Code § 600A.1; *G.A.*, 826 N.W.2d at 127.

### III.    Abandonment

B.L. claims the district court should have found the father abandoned the child. She states even if she restricted the father from having visitation with the child, he should have attempted to maintain regular communication with her and the child. She points out the father knew where she lived in 2008. Furthermore, she points out the father sent her two letters while he was in prison, which she received. Additionally, he sent her a Facebook message when he was released from prison, seeking visitation with the child, which she also received. The mother claims the father could have contacted her parents to find out her address and telephone number. She also claims he could have initiated legal proceedings to obtain visitation with the child.

Section 600A.8(3)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and

financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

    (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The phrase, "[t]o abandon a minor child" has been defined as meaning a parent "rejects the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(19).

The record shows the father contributed towards the support of the child in a reasonable amount, according to his means. *See id.* § 600A.8(3)(b). The district court found, "While the amount of child support that was paid is small, the record of child support payments is that the father has paid child support every year of this child's life." The court also found, "[E]ven though the amounts paid are small, there is a clear history of an attempt to regularly meet his child support obligation regarding" the child. We agree with the court's findings on this issue. The evidence shows the father consistently paid child support for the child, even if his payments were sometimes not the full amount due. The father paid child support within his means. The father testified he expected to soon be able to pay off the full amount of his obligation.

The father did not have regular contact with the child. On our de novo review, we concur in the district court's conclusion the father was prevented from having further contact by the actions of the mother. We give weight to the court's finding the mother was not a credible witness. We find the mother unilaterally

decided in March 2008 the father could no longer visit the child. When the father attempted to contact her through letters and Facebook, she ignored his requests. T.L.'s sister testified B.L. told her "she was going to do everything she could to keep [K.C.] away from [T.L.]" The mother also refused the sister's attempt to arrange contact through a third person. The mother stated she had lived in five different towns with the child and never told the father her address or telephone number. We agree with the district court's finding, "[N]o efforts made by the father would have resulted in the mother responding to him short of legal action, and it is clear to this Court that the father could not afford to initiate legal action to gain visitation."

Based on the specific facts presented in this case, where the evidence shows the mother prevented the father from having contact with the child, we find the mother failed to present clear and convincing evidence to show the father abandoned the minor child. Like the district court, because we have determined there is no statutory ground for termination of the father's rights, we do not address the issue of whether termination would be in the child's best interests. We affirm the decision of the district court.

**AFFIRMED.**