# IN THE COURT OF APPEALS OF IOWA

No. 18-1689
Filed August 21, 2019

**IN THE INTEREST OF P.M., B.M., and L.M.,**
**Minor Children,**

**J.M and H.M., Guardians,**
        Petitioners-Appellees,

**J.M., Father,**
        Respondent-Appellant,

**H.R., Mother,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Page County, Amy L. Zacharias, Judge.


        Parents appeal the termination of their parental rights to their three minor children under Iowa Code chapter 600A (2018). **AFFIRMED ON BOTH APPEALS.**


        Marti D. Nerenstone, Council Bluffs, for appellant father.

        Justin R. Wyatt of Woods & Wyatt, PLLC, Glenwood, for appellant mother.

        Katherine Kaminsky Murphy of Kate Murphy Law, P.L.C., Glenwood, for appellees.

        Jaclyn A. Tackett of Tackett Law Offices, Glenwood, guardian ad litem for minor children.

        Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

Parents Joshua and Hanna each appeal the termination of their parental rights to their three minor children, P.M., B.M., and L.M. The district court granted the guardians' petition to terminate both parents' rights under Iowa Code section 600A.8(3)(b) (2018). Both parents argue insufficient evidence supported a finding that they abandoned the children and termination of their parental rights is not in the children's best interest. We affirm the district court.

### I.    Background Facts and Proceedings

Joshua and Hanna are the biological parents of P.M., B.M., and L.M., who, at the time of the termination hearing, were twelve, eight, and nine years old, respectively. All three children have been in the guardianship of their paternal grandparents, Janette and Harry, since March 2011. P.M. lived with the guardians part time from November 2007 to August 2009, and then full time from August 2009 until March 2011. B.M. and L.M. lived with Joshua and Hanna until Janette and Harry became their guardians.

Joshua and Hanna tried to terminate the guardianships twice, although the second petition to terminate the guardianships was continued multiple times and neither parent had asked for a hearing on it by the day of the termination hearing. In the August 2013 order denying the first petition to terminate guardianship, the district court noted visits between Joshua, Hannah, and the children had been stopped pursuant to a Department of Human Services (DHS) recommendation because of allegations of methamphetamine use by the parents. The court also noted the parents had not "consistently attended the counseling and medical care visits of the children," cooperated with the DHS investigation of the

allegations of drug use by the parents, or "kept the guardians updated as to their living arrangements and home address as well as work address," as required by a prior order. The court directed the parents to keep the guardians informed of their contact information, provide documentation of living arrangements and proof of clean drug tests to the court, and attend supervised therapy sessions with the children's therapist.

The parents did not comply with the court's order. They never gave the guardians their contact information, although Janette got Joshua's phone number from her phone when he contacted her in early 2018. At the August 2018 termination hearing, the counselor with whom the supervised visits were supposed to take place testified that the visits never occurred. The parents had scheduled one visit in October 2015, but the visit was later cancelled. At the termination hearing, the parents produced an unsigned copy of a lease beginning in August 2018. The parents also produced clean drug test results, but the drug tests they had taken were not the hair follicle tests specifically required by the court in the August 2013 order.

Except for two instances, the parents did not have any contact with the children between August 2013 and August 2018. The first occasion was a chance encounter at a restaurant in 2015, and the second instance was contact with P.M. through Facebook starting in December 2017 and ending in January 2018. Neither contact was supervised by the counselor nor was otherwise in compliance with the conditions set forth in the August 2013 order.

The guardians filed the petition to terminate Joshua and Hanna's parental rights on April 4, 2018. The hearing was first scheduled for May 22, but it was

continued until August 29. At the termination hearing, the parents testified that they did not understand the August 2013 order to require them to arrange supervised visits through the counselor, whose phone number they had lost. They also testified that they repeatedly tried to contact Janette to speak with the children, but she refused to answer the calls. The district court heard this testimony and concluded it was not credible. The district court ultimately terminated both Joshua and Hanna's parental rights to all three children under section 600A.8(3)(b). Both parents appeal.

## II.  Standard of Review

We review termination of parental rights proceedings under Iowa Code chapter 600A de novo. *In re Q.G.*, 911 N.W.2d 761, 769 (Iowa 2018). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 491 (Iowa 2000).

## III.  Discussion

Joshua and Hanna make two arguments: first, they argue insufficient evidence supported the determination that they had each abandoned P.M., B.M., and L.M. under Iowa Code section 600A.8(3)(b); second, they argue it is not in the children's best interest for their parental rights to be terminated.[1]

---

[1] In his reply brief, Joshua further argues many of the legal arguments made by the guardians in their appellate brief are inadequately cited and so are waived under the Iowa Rules of Appellate Procedure. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); Iowa R. App. P. 6.904(2)(a) ("In citing cases, reference must be made to the court that rendered the opinion and the volume and page where the opinion may be found in the National Reporter System, if reported therein."); *see also State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013) ("Rule infractions are not a trivial matter. A party's disregard of the rules may lead to summary disposition of the appeal or waiver of an issue. Additionally,

### a. Abandonment under section 600A.8(3)(b)

"The grounds for termination of a parent's rights must be established by clear and convincing evidence." *In re T.S.*, No. 18-1333, 2019 WL 325042, at *1 (Iowa Ct. App. Jan. 23, 2019) (quoting *In re C.A.V.*, 787 N.W.2d 96, 100 (Iowa Ct. App. 2010)). The district court terminated both parents' rights under Iowa Code section 600A.8(3)(b). Under that provision,

> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). The petitioning party has the burden of proof. *In re G.A.*, 826 N.W.2d 125, 129 (Iowa Ct. App. 2012). Section 600A.8 clarifies "[t]he subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph . . . 'b' manifesting such intent, does not

---

we refuse to assume a partisan role and undertake a party's research and advocacy when a party's failure to follow the rules would require us to do so to reach the merits of the case. Furthermore, this court's principal role is to dispose justly of a high volume of cases. A party's noncompliance with the rules of procedure hinders our effort to meet this mandate. On the other hand, observance of the rules promotes judicial efficiency because uniformity and consistency ease navigation and analysis of the thousands of briefs the court makes it[s] way through each year." (citations and footnote omitted)). We decline to deem the guardians' arguments waived, and we will address their contentions.

preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(c).

On de novo review, we conclude clear and convincing evidence supports the district court's determination that both Joshua and Hanna abandoned the children under section 600A.8(3)(b). "The threshold element of 'substantial and continuous or repeated contact' is economic contributions." *In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015). Both parents were over $10,000 behind on child support payments at the time of the termination hearing. Hanna has not worked since 2013 and admitted during the termination hearing that she chose not to work to take care of her and Joshua's fourth child.[2] Joshua argues on appeal that he has provided contributions in the form of medical and life insurance for the three children. On cross-examination, Joshua testified he was required by state law to pay for the children's health insurance. He further admitted that, for the life insurance policies, only Hanna was a beneficiary of the policies on P.M., B.M., and L.M., and Hanna and P.M. were the beneficiaries of the policy on himself. Hanna was also the trustee of Joshua's life insurance policy, if Joshua died while P.M. was still a minor.

A finding that the parents abandoned the children is also supported by the parents' failure to make meaningful efforts to either visit or regularly communicate with the children in the ways prescribed by the August 2013 order and under Iowa Code section 600A.8(3)(b)(1) and (2). "[A] showing of abandonment does not require total desertion; feeble contacts can also demonstrate abandonment." *In re T.B.*, No. 14-1984, 2016 WL 530990, at *7

---

[2] The fourth child is not a subject of these proceedings.

(Iowa Ct. App. Feb. 10, 2016) (citing *In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993)). At the hearing to terminate the guardianship, the court instructed Joshua and Hanna to provide proof of living arrangements and clean drug tests to set up unsupervised visits. They did not do so until the termination hearing, and even then they did not produce either drug test results or a lease that met the August 2013 order's requirements. The order gave them express permission to attend any school conferences and activities the children were involved in, yet they only tried to contact the children at the school once in 2013 by visiting during lunch. After school staff did not allow them to join the children for lunch, the parents never tried to attend any school events or activities.

The parents argue they intended to maintain consistent contact with the children, but Janette prevented them from doing so. Hanna testified Janette refused to take their calls and blocked them on social media, although, as noted above, the district court did not find this testimony credible. Joshua testified Janette had taken his call when he called her to discuss the children's health insurance in early 2018. Janette testified that she understood the August 2013 court order to require Joshua and Hanna to set up appointments through the children's counselor, not through her, and that neither Joshua nor Hanna had provided her with their contact information until Joshua called her. We have found parents to have abandoned a child in similar circumstances, even assuming Janette deliberately denied the parents contact with the children. *See id.* ("Even if we assume that their interest in visitation was frustrated by the guardian's actions, both the father and mother fail to satisfy the alternative means of regular communication with either the children or the children's

guardian."); *In re A.M.M.*, No. 13-0627, 2014 WL 3928877, at *2 (Iowa Ct. App. Aug. 13, 2014) (terminating a mother's parental rights where she made "only marginal effort" to maintain regular contact with either the child or the child's guardian).

### b. Best-Interest Analysis

Both parents argue terminating their parental rights is not in the children's best interest. "The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting [chapter 600A]." Iowa Code § 600A.1(1). Iowa Code section 600A.1(2) provides,

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

The district court determined terminating Joshua and Hanna's parental rights is "overwhelmingly in the children's best interest." The district court emphasized the minimal contact between the parents and the children since 2013, and the fact the parents did not schedule any visits with the children in the three months between when the termination hearing was first set in May 2018 and when it took place in August 2018.

Like the district court, we conclude termination of Joshua and Hanna's parent rights is in the children's best interest. As discussed above, many factors listed in section 600A.1(2) point toward termination: the parents have contributed little financially; they have only been in the children's presence once since 2013;

they made little effort to comply with the August 2013 order, and even then only just before the August 2018 termination hearing. All three children have been in the guardians' care for most of their lives, and they now call the guardians their parents. Joshua and Hanna have not maintained a place of importance in P.M., B.M., and L.M.'s lives.

**AFFIRMED ON BOTH APPEALS.**