# IN THE COURT OF APPEALS OF IOWA

No. 20-1235
Filed April 28, 2021

**IN THE INTEREST OF D.B.,**
**Minor Child,**

**D.G., Guardian,**
　　　Petitioner-Appellee,

**C.B., Mother,**
　　　Respondent-Appellant,

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

J. David Zimmerman of J. David Zimmerman, P.C., Clinton, for appellant mother.

Bradley T. Boffeli of Boffeli & Spannagel, P.C., Maquoketa, for appellee guardian.

Billy B. Coakley of Wright & Coakley, Maquoketa, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Schumacher, JJ. Tabor, J., takes no part.

**MAY, Presiding Judge.**

The juvenile court terminated the mother's parental rights to her child, D.B., in a private termination proceeding.[1]  On appeal, the mother argues (1) the guardian failed to establish abandonment under Iowa Code section 600A.8(3)(b) (2020) and (2) termination is not in D.B.'s best interest.  We affirm.

**I. Background Facts and Proceedings**

D.B. was born in 2013.  In 2014, D.B.'s mother asked D.B.'s maternal aunt to be a guardian for D.B. so the mother could avoid involvement with the Iowa Department of Human Services (DHS).  In April 2014, D.B.'s maternal aunt was appointed as D.B.'s guardian.

At first, the mother, guardian, and D.B.'s maternal grandparents shared in caring for D.B. as they all lived close to one another.  But the guardian testified that in "the latter part of 2014," the mother "became kind of distant, a little withdrawn."  Around this time, the guardian learned that the mother was pregnant with D.B.'s brother.

On Memorial Day weekend in 2015, the mother asked the guardian to watch D.B. and his brother.  When the guardian arrived at the mother's house, D.B. came outside unattended to meet the guardian.  When the guardian entered the house, she found D.B.'s brother "in his bouncy seat [with] food down the front of him, [he] was in a soiled diaper, and had a slight rash on his legs."  D.B. and his brother had been left in the care of a twelve-year-old and fourteen-year-old.  The guardian noted that the house was "very hot" and "[t]here were other small children in the

---

[1] The juvenile court also terminated the father's parental rights.  He does not appeal.

home." The guardian informed the mother that she would be keeping D.B. and his brother for the weekend. The mother responded "that was fine because she had been drinking."

After the incident over Memorial Day weekend, the guardian noted that the mother's visitation with D.B. "became very much more sporadic." The guardian noticed "[t]here was definitely a change" in the mother. The mother "became [more] distant, kind of disconnected somewhat," and her appearance changed. The guardian "suspected drug use as well."

In 2015, the mother moved. The mother and the guardian met to work out a more regular visitation schedule. But the mother would cancel visits for various reasons, and the guardian was concerned over the mother's living situation. The mother testified she only had five weekend visitations with D.B. in 2015. And approximately six contacts with D.B. that were not overnight visits.

In 2016, the mother was convicted of animal neglect causing death or serious injury after "letting a dog starve to death." After the guardian learned of the mother's conviction, the guardian had "concerns [about] whether [the mother] was able to care for a child and make sure that that child ate and was cared for and not left alone." As a result, the visits between D.B. and the mother lessened and overnight visits ceased. The mother testified that she had six contacts with D.B. in 2016. But the guardian noted the mother did not ask for overnight visits.

The mother testified she had five contacts with D.B. in 2017. The guardian noted that it was around this time that the mother only wanted to be D.B.'s mother "when it was fun, so she would definitely pop up around birthday time, holiday time."

The mother testified she had about fifteen contacts with D.B. in 2018. Many of these visits were supervised by DHS due to issues related to D.B.'s brother. The guardian testified that the last time the mother saw D.B. in person was in November for D.B.'s brother's birthday. Around this time, the mother's parental rights to D.B.'s brother were terminated after DHS alleged domestic violence and drug use in the home. The guardian testified that D.B.'s brother tested positive for methamphetamine. And the mother admitted to using methamphetamine around this time. D.B.'s brother has since been adopted by his great aunt. The guardian testified that D.B. and his brother both stay with the guardian during the week to "build[] that brother relationship."

In 2019, D.B. did not have any contact with the mother except for one video chat. The termination hearing took place in July 2020. D.B. and the mother had not had any contact so far in 2020. The guardian testified that for the last two years, the mother had not sent any birthday or holiday cards to D.B. The mother had not attended any of D.B.'s student-teacher conferences. The mother had not offered the guardian any money to provide for D.B. The mother did provide a pay record to the court post-trial. Starting in December 2019, child support was automatically withdrawn from her paychecks.

The guardian testified that her address and phone number have remained the same for the last four years. The mother's parents live a couple of blocks away from the guardian and D.B. Despite the mother's lack of contact with D.B., the mother testified that she visits her parents monthly and talks to her mother almost every day.

The mother acknowledged that D.B. is safe in the guardian's care and the guardian has taken good care of D.B. The guardian has provided stability for D.B. in his home and school life. The guardian plans on adopting D.B. D.B. calls the guardian "mom."

In February 2020, the guardian filed a petition for private termination. She alleged the mother abandoned D.B. and did not object to termination so her parental rights should be terminated under Iowa Code section 600A.8(3)(b) and (5).

The court heard evidence in July 2020. At that time, D.B. was seven years old.

In August, the juvenile court issued an order terminating the mother's parental rights pursuant to section 600A.8(3)(b). The mother now appeals.

## II. Standard of Review

"We review private termination proceedings de novo." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). "We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations." *Id.*

## III. Analysis

The mother argues (1) the guardian failed to prove she abandoned D.B. under section 600A.8(3)(b) and (2) termination of her parental rights is not in D.B.'s best interest. We address each argument in turn.

## A. Abandonment

"In a private termination proceeding, the petitioner[] must establish by clear and convincing evidence the statutory ground . . . authorizing the termination of

parental rights." *In re T.S.*, No. 15-0443, 2015 WL 5311413, at *1 (Iowa Ct. App. Sept. 10, 2015). Abandonment is one of the statutory grounds permitting termination. Iowa Code § 600A.8(3). Section 600A.8(3)(b) provides,

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>    (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>    (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>    (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

On appeal, the mother argues the evidence does not support the juvenile court's finding of abandonment. We disagree. Following our de novo review, we conclude the guardian has proven by clear and convincing evidence that the mother failed to "maintain[] substantial and continuous or repeated contact" with D.B. as contemplated by section 600A.8(3)(b). To begin with, the record shows the mother has failed to make "contribution[s] toward support of the child of a reasonable amount." *See id.* at § 600A.8(3)(b). The mother has only recently started providing a portion of her paycheck to support D.B. And while section 600A.8(3)(b) only requires parents to provide support "according to the parent's means," we find the mother's paltry contribution fell far short of what she was capable of providing over the course of D.B.'s life thus far.

Moreover, the mother failed to "[v]isit[] the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child." *See id.* at § 600A.8(3)(b)(1). As already mentioned, the mother has not seen D.B. in over a year. The mother blames this on the guardian. But we adopt these findings of the juvenile court:

> [T]he mother's testimony with regard to the history of the child's placement is not credible. The mother's rendition of the events does not take into account the mother's life choices, the mother's inability to meet the needs of the child, and the mother's substance abuse and living decisions that prevented her from being a part of the child's life, and the restrictions placed upon the mother visiting the child by the guardian were for the child's best interest and not in an attempt to prevent the mother from having contact with her child.

Additionally, when the mother was unable to visit, she failed to maintain "[r]egular communication with the child." *See id.* at § 600A.8(3)(b)(2). The mother has not been engaged in D.B.'s education. And she has not given D.B. holiday or birthday presents in years. While the mother produced copies of text messages at the termination hearing, at best they show a marginal effort by mother to communicate with D.B. or the guardian.

Finally, it is undisputed the mother did not live "with the child for a period of six months" during the year prior to the termination hearing. *See id.* at § 600A.8(3)(b)(3).

In short, clear and convincing evidence establishes that the mother abandoned D.B. under section 600A.8(3)(b).

**B. Best-Interest Analysis**

The mother also argues termination is not in D.B.'s best interest. She claims that her parental rights should not be terminated since "[t]here was no

evidence offered at trial that any of the mother's contacts with D.B. had been harmful or that any risk of harm had occurred during those visits."

The child's best interest is the "paramount consideration" when determining whether to terminate. Iowa Code § 600A.1(1). Section 600A.1(2) provides,

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Following our de novo review, we conclude termination is in D.B.'s best interest. *See In re A.C.W.*, No. 18-0287, 2018 WL 4923172, at *3 (Iowa Ct. App. Oct. 10, 2018). As previously discussed, the mother has not financially provided for D.B. in a substantial way. She has not demonstrated a "genuine effort to maintain communication" in at least the last year of D.B.'s life. *See* Iowa Code § 600A.1(2). Despite her claim, there are substantial concerns regarding her ability to ensure the safety of D.B. given her past conduct. Conversely, the guardian is able to support all of D.B.'s needs, as she has done for most of D.B.'s life. The guardian is willing to adopt D.B. *Cf.* Iowa Code § 232.116(2)(b) (permitting the court to consider whether a child's placement is willing to adopt the child when making a best-interest determination); *In re Q.G.*, 911 N.W.2d 761, 771 (Iowa 2018) (noting we have "borrowed from Iowa Code section 232.116(2) and (3) to flesh out the best-interest-of-the-child test"). And D.B. already sees the guardian as his "mom." So we find termination is appropriate.

**IV. Conclusion**

The district court properly terminated the mother's parental rights.

**AFFIRMED.**