In the Interest of G.A., Minor Child,

R.A.E., Petitioner,

J.J.A., Father, Appellant.

No. 12–0871.

Court of Appeals of Iowa.

Dec. 12, 2012.

Martyn S. Elberg of Elberg Law Office, P.L.C., Eagle Grove, for appellant.

Dani L. Eisentrager, Eagle Grove, for appellee.

Derek J. Johnson, Fort Dodge, attorney and guardian ad litem for minor child.

Considered by DOYLE, P.J., and MULLINS and BOWER, JJ.

MULLINS, J.

A father appeals the termination of his parental rights under Iowa Code section 600A.8(3) (2011). While the father does not dispute that he failed to maintain regular contact with the child, he contends termination was inappropriate because the mother prevented visitation, and termination is not in the child's best interests. We affirm.

I. Background Facts & Proceedings

The parties have one child together, G.A. (born March 2006). On or about

February 1, 2007, the parties ended their two-year relationship and stopped living together. Since then, G.A. has been in the mother's sole physical care.

At some point in 2007, the mother began a relationship with her present husband. The mother and G.A. moved into his home in March 2009. He is willing to adopt G.A. pending the outcome of the termination proceedings.

The father has an extensive criminal history, including a conviction for the manufacture of methamphetamine. During his relationship with the mother and while living with G.A., the father used drugs, including methamphetamine and marijuana. At the time of these proceedings, the father had been indicted on federal criminal charges for possessing a firearm as a felon and was facing eight to ten years in prison, if convicted.

The last time the father visited G.A. was in January 2009. At that time the father arrived at the mother's home unannounced at four o'clock in the morning. The mother thought he was "really drunk." The mother testified, "He was bouncing all over the house, kept trying to blare music, and wanted me to wake up and hang out with him." Meanwhile, G.A. was sleeping. The father called a friend for a ride home. G.A. woke up before the father left, so the father took G.A. and left the house with the friend. The mother attempted repeated telephone calls to the father to make sure G.A. was safe. The father finally returned her calls when he was in Fort Dodge with G.A.'s paternal grandmother. Although the father was scheduled to work that night, he told the mother he would call in sick and requested to have G.A. spend the night. The mother consented. However, she subsequently learned that the father went to work that night at a local bar and left G.A. in the care of a woman whom she had never met. The mother immediately drove to pick up G.A.

The father's next contact with G.A. was in the spring of 2009 while he retrieved personal belongings from the mother's home. He arrived at the mother's home with a friend. He did not visit with G.A. beyond the time it took to load his belongings into his friend's vehicle. The mother testified that G.A. was sad after the visit.

The father contacted the mother in September 2009 and requested a visit with G.A. The mother replied, "[It has] been a really long time and the last time you saw [G.A., the visit did not] go very well, so you need to call. You need to ask how [G.A. is] doing." The father did not call G.A.

In September 2009, the mother began documenting text messages from the father. Since that time, the father sent occasional text messages to the mother. In April 2010, the mother texted the father, noting that he was falling behind on his child support, and asked, "[d]o you want to terminate your parental rights?" Almost five weeks later, on May 10, 2010, he responded asking to see his daughter. That same day several text messages were exchanged. The mother requested the father start communication with G.A. slowly, suggesting he place a phone call to G.A. He did not initiate a call to G.A. or the mother, or take any further steps to make contact with G.A. at that time. At trial, the mother testified she placed this condition on visitation because the father had not seen G.A. in over a year before that visitation request.

On October 4, 2010, he texted the mother asking to see G.A., and added "or do [I] have to file papers for supervised visits to start[?]" The next day they exchanged texts during which mother requested the father provide a clean drug test, either urine or hair follicle, before exercising visi-

tation. He never complied with that request, nor did he initiate any other efforts to visit or communicate with G.A. at that time.

On February 11, 2011, the mother filed a petition to terminate the father's parental rights. The mother alleged grounds for termination based on the father's failure to provide child support, abandonment, and consent.

In August 2011, the father filed a petition for establishment of custody, visitation, and child support. The court stayed his petition pending the outcome of these proceedings. The father made no other overtures for contact with G.A.

On March 2, 2012, the juvenile court held a hearing on the mother's petition to terminate the father's parental rights. The juvenile court found the father did not consent to termination and had provided adequate financial support. However, the juvenile court also found

> [T]he parent must not only contribute to the support of the child, but maintain a relationship with the child. Even if the father is deemed to have substantially paid the appropriate amount of support for [G.A.], he has completely failed in his obligations to maintain substantial and continuous or repeated contact with [G.A.] It is undisputed that he has not lived openly with the child at any time within the last one year period. It is

also undisputed that he failed to visit the child at least monthly or that he failed to have regular communication with [G.A.] or even with the mother. Both parents live in the same area. The father made no claims that he was physically or financially unable to visit or communicate.

On April 12, 2012, the court found the father abandoned G.A., and ordered termination of the father's parental rights under section 600A.8(3). The father appeals the juvenile court's decision.

Additional facts will be developed below.

## II. Standard of Review

■ We review private termination proceedings de novo. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations. *Id.* Our primary concern in termination proceedings is the best interests of the child. Iowa Code § 600A.1; *R.K.B.*, 572 N.W.2d at 601.

## III. Analysis

### A. Abandonment

Iowa Code chapter 600A provides the exclusive means by which parental rights shall be terminated for a minor child who is neither subject to the Iowa Indian Child Welfare Act, nor subject to termination pursuant to chapter 232.[1] Iowa Code

---

1. This court has previously recognized the difference between termination under chapter 600A and termination under chapter 232. *In re T.N.M.*, 542 N.W.2d 574, 576 (Iowa Ct.App. 1995). The court in *T.N.M.* found

> The Iowa Code contains two provisions for the termination of parental rights, chapter 600A and chapter 232, which create separate and distinct causes of action having different applicability based upon the facts of the situation. Chapter 600A provides for voluntary termination of parental rights, allowing a "parent or prospective parent of

the parent-child relationship" to petition for termination. Iowa Code section 600A.5(1)(a) (1983).

*Id.* (quoting *In re H.J.E.*, 359 N.W.2d 471, 474 (Iowa 1984)). Under Iowa Code chapter 232, "[a] child's guardian, guardian ad litem, or custodian, the department of human services, a juvenile court officer, or the county attorney may file a petition for termination of the parent-child relationship and parental rights with respect to a child." Iowa Code § 232.111(1).

§§ 600A.3, 600A.5(2). We start our analysis with an examination of the relevant portions of the code sections that are applicable to this case.

Iowa Code section 600A.1 explains that the best interests of the child are paramount and outlines the factors a court should consider to determine whether a parent has affirmatively assumed the duties of parenthood:

This chapter shall be construed liberally. The best interest of the child subject to the proceedings of this chapter shall be the paramount consideration in interpreting this chapter. However, the interests of the parents of this child or any natural person standing in the place of the parents to this child shall be given due consideration in this interpretation.

The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.[2]

Iowa Code section 600A.2 provides definitions, and includes

19. *"To abandon a minor child"* means that a parent ... rejects the duties imposed by the parent-child relationship ... which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to ... communicate with the child.[3]

Iowa Code section 600A.8(3), as amended by the legislature in 2004, added more specific direction for the courts and explained the role of subjective intent:

The juvenile court shall base its findings and order under section 600A.9 on clear and convincing proof. The following shall be, either separately or jointly, grounds for ordering termination of parental rights:

. . . .

3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:

. . . .

*b.* If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from do-

---

2. The last paragraph of this section was added in 1994. 1994 Iowa Acts ch. 1174, § 12.

3. Prior to legislative action in 1997, the definition included "intention to abandon." Iowa Code § 600A.2(18)(1995) had provided: *"To abandon a minor child"* means to permanently relinquish or surrender, without reference to any particular person, the parental rights, duties, or privileges inherent in the parent-child relationship. The term includes both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.

ing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

. . . .

c. The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph "a" or "b" manifesting such intent, does not preclude a determination that the parent has abandoned the child. In making a determination, the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph "a" or "b".

█ Although the father does not dispute his lack of contact with G.A., he argues the mother prevented him from exercising visitation. To terminate parental rights for abandonment under section 600A.8(3)(b), the petitioning party must show the child is at least six months old at the time of the termination hearing and the parent for whom termination is sought has failed to maintain "substantial and continuous or repeated contact with the child."

After more than a year had passed without the father asking for or having any contact with G.A., the mother's request in May 2010 that the father first pursue phone communication with G.A. (then four years old) so that she could get reacquainted with him prior to exercising visitation was fair and reasonable. He took no steps to initiate such contact. In light of the father's limited contact with G.A. and his substantial criminal history and evidence of drug use, we find the mother's condition on the October 4, 2010 visitation request that he show some proof of being drug free

was also fair and reasonable. The father made no attempt to comply with this condition. Under the facts and circumstances of this case, the mother's requests were not unreasonable and do not support the father's claim that she prevented his visitation of G.A.

The father argues his fear of arrest prevented him from maintaining contact with his child. He alleges he was afraid the mother, or the mother's ex-husband—a police officer in the area—would have him arrested if he attempted to visit the child. In support of his argument, the father points to a time when the mother recanted her testimony about an incident of domestic abuse. The father also argues that a no-contact order issued on May 29, 2007, prevented him from contacting the mother or G.A.

The father must take personal responsibility for his own wrongful and criminal acts, and cannot use such acts as a justification for his lack of relationship with the child. *In re J.L.W.*, 523 N.W.2d 622, 624 (Iowa Ct.App.1994). The mother's ex-husband had not been involved in any of the father's previous arrests. The father's own actions and decisions resulted in an extensive criminal history and the complicated circumstances that existed. The no-contact order expired on May 29, 2008, more than two and a half years before the mother filed her termination petition in this case. We find the father's fear-of-arrest argument unconvincing.

Further, the father contends the mother prevented his attempt to contact the child at school. In late 2009, the father attempted to visit G.A. at preschool. The school denied the visit because the father's last name was different from G.A.'s last name at the time of the attempted contact. The school notified the mother about the attempted contact. The mother requested

the school contact her in the event the father attempted additional contact with G.A. The mother's attorney wrote a letter to the school indicating that the father "does not have visitation with the child."[4] A couple of months after the initial attempted contact, the father returned to the school with G.A.'s birth certificate. The school changed G.A.'s last name on the school records to match that on the birth certificate. The father alleges the mother's letter to the school prevented visitation. We find this argument unpersuasive.

Although the father asserts an interest in G.A., the legislature has specifically directed that a subjective interest in the child, "unsupported by evidence of acts specified in paragraph 'a' or 'b' [monthly visitation and regular communication] manifesting such intent, does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c); see In re C.A.V., 787 N.W.2d 96, 101 (Iowa Ct.App.2010). Parental responsibility demands "affirmative parenting to the extent it is practicable and feasible under the circumstances." In re Goettsche, 311 N.W.2d 104, 106 (Iowa 1981);[5] see also Iowa Code § 600A.1. A parent not living with a child within the last twelve months may demonstrate the requisite level of contact with the child in two ways. See Iowa Code § 600A.8(3)(b). First, when physically and financially able and when not prevented by the child's custodian, the parent must visit the child at least monthly. Id. § 600A.8(3)(b)(1). In the alternative, when physically and financially unable to visit or when the child's custodian prevents visitation, the parent must maintain regular communication with the child or with the person having the care or custody of the child. Id. § 600A.8(3)(b)(2).

The father was physically and financially capable of visiting and communicating with G.A. He did not do so. He did not affirmatively attempt to visit the child monthly. See Iowa Code § 600A.8(3)(b)(1). Although we find the mother did not prevent visitation, assuming arguendo that the mother had prevented visitation, section 600A.8(3)(b)(2) requires the father to maintain regular communication with the child or the child's custodian. He did not affirmatively attempt regular communication with the child. Id. § 600A.8(3)(b)(2). The father's sporadic text messages to the mother are insufficient to meet the regular communication requirement contemplated under section 600A.8(3)(b)(2), and were at best only marginal efforts to communicate. See id. § 600A.2(19). The reasonable requests by the mother cannot be blamed for the father failing to have visitation with his child for more than twenty-four months and failing to have any contact with his child for a period of eighteen months prior to the time the petition was filed. Even though the father has expressed his subjective intent to be a parent to G.A., he has failed to manifest that intent, and has failed to "affirmatively assume the duties encompassed by the role of being a parent." Id. §§ 600A.8(3)(c), 600A.1.

## B. Best Interest

The father argues it is not in the child's best interest to terminate his parental

---

4. In pertinent part, the letter stated, "[The father] does not have visitation with the child nor has he pursued any action to do so. [G.A.] has had very limited contact with [the] father and we believe it will be very detrimental should he show up at the school and attempt to have contact with [G.A.] without going through the proper procedures."

5. The Goettsche case also required an intent to abandon. 311 N.W.2d at 106. That requirement has been altered by subsequent legislative enactments as shown above.

rights. To terminate parental rights under chapter 600A, the petitioning party must show termination is the in the child's best interests. *R.K.B.*, 572 N.W.2d at 602.

 In our de novo review, we have considered the lack of the father's "demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *See* Iowa Code § 600A.1. We find no close relationship between the father and G.A. The father has had limited contact with G.A. and has failed to establish a parental relationship. He has an extensive criminal history, substance abuse issues, and pending federal charges. On the other hand, G.A.'s step-father provides for all of G.A.'s needs and has expressed a willingness to adopt the child pending the outcome of these proceedings. We find the mother has established by clear and convincing evidence that terminating the father's parental rights would serve the child's best interests.[6]

## IV. Conclusion

Upon our de novo review, we find the mother presented clear and convincing evidence of the father's failure to parent, to visit, or to maintain contact with his child, and terminating the father's parental rights is in the child's best interests. Accordingly, we affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED.**

---

**6.** The guardian ad litem also recommended termination.