# IN THE COURT OF APPEALS OF IOWA

No. 15-1934
Filed April 27, 2016

**IN THE INTEREST OF L.M.,**
**Minor Child,**

**Maxine Buckmeier, Custodian,**
Petitioner-Appellee,

**L.Z.L., Father,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. McCollum Timko, Associate Juvenile Judge.

A putative father appeals the juvenile court order terminating his parental rights in a private termination action. **AFFIRMED.**

Matthew R. Metzgar of Rhinehart Law, P.C., Sioux City, for appellant.

Maxine M. Buckmeier of Maxine M. Buckmeier, P.C., Sioux City, custodian-appellee.

David L. Gill of Baron, Sar, Goodwin, Gill & Lohr, Sioux City, guardian ad litem-appellee.

Suzan E. Boden of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Ross, L.L.P., Sioux City, for the mother.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A putative father appeals the juvenile court order terminating his parental rights in a private termination action. We find there is clear and convincing evidence in the record to show the father abandoned the child within the meaning of Iowa Code section 600A.8(3)(a) (2015) and termination of the father's parental rights is in the child's best interests. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

R.M. is legally married to M.P., but has been in a long-term relationship with L.Z.L. and they have been living together "on and off." The Iowa Department of Human Services (DHS) became involved with the family and two children of R.M. and L.Z.L. were removed from their care in September 2014. The children were adjudicated to be children in need of assistance (CINA).

In December 2014 R.M. discovered she was pregnant. She testified she told L.Z.L. of the pregnancy and his response was "get rid of it." Prior to the child's birth the mother contacted an attorney, Maxine Buckmeier, and discussed a private adoption for the child. The attorney's office paid for the mother's medical expenses and some living expenses during the pregnancy. L.Z.L. provided minimal support, buying her a t-shirt and taking her out to eat "a couple times." He did not pay any of the medical bills for the pregnancy.

The child who is the subject of this action was born in July 2015. The child has some health concerns. L.Z.L. is the putative father of the child. Both R.M. and L.Z.L. testified L.Z.L. visited the mother and child in the hospital at the time of the birth. On July 20, 2015, the mother filed a release of custody,

pursuant to section 600A.4, and Buckmeier became the custodian of the child. L.Z.L. called the parties' DHS worker, Mary Kay Renkin, on July 22, 2015, to ask about the child. He was informed DHS was not planning on becoming involved because of the expected private adoption of the child. Renkin directed L.Z.L. to contact Buckmeier with questions about the child. L.Z.L. never contacted Buckmeier or had any contact with the child after Buckmeier became the child's custodian.

Buckmeier filed a petition on July 20, 2015, seeking to terminate L.Z.L.'s parental rights on the grounds of abandonment. While the termination action was pending, the juvenile court entered an order in the CINA action involving the parents' other children finding the parents had not followed through with services to the point where they were able to resume care of those two children.

A termination hearing was held on October 19, 2015. R.M. testified she was voluntarily giving up her parental rights to the child. L.Z.L. testified he asked to see the child at the hospital, but Buckmeier told him he needed to leave because he did not have any rights to the child since R.M. was married to someone else. L.Z.L. admitted he had not taken any steps to establish his paternity of the child. Renkin testified DHS would have removed the child due to the problems of R.M. and L.Z.L., which led to the removal of their other children, but for the expected private adoption of the child. Buckmeier testified L.Z.L. had never inquired about the child or asked for visitation. She denied asking L.Z.L. to leave the hospital, but stated R.M. asked him to leave because he was upsetting her. The guardian ad litem supported termination of the parents' rights.

The juvenile court entered an order on November 10, 2015, terminating the parents' rights.[1] The court found L.Z.L. had not demonstrated a willingness to assume custody of the child, taken prompt action to establish a relationship with the child, or taken measures to establish legal responsibility for the child. The court also found termination of his parental rights was in the child's best interests. L.Z.L. appeals the termination of his parental rights.

## II.    Standard of Review

Our review in matters pertaining to termination of parental rights under Iowa Code chapter 600A is de novo. *In re D.E.E.*, 472 N.W.2d 628, 629 (Iowa Ct. App. 1991). A termination order must be supported by clear and convincing proof. Iowa Code § 600A.8. "Clear and convincing evidence is evidence that leaves 'no serious or substantial doubt about the correctness of the conclusion drawn from it.'" *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002) (citation omitted).

## III.    Abandonment

L.Z.L. claims there is not clear and convincing evidence in the record to support a finding he abandoned the child. He states he was not aware prior to the child's birth R.M. intended to have the child placed for adoption. He states he would have done more to be involved with the child but Buckmeier told him he could not have anything to do with the child because R.M. was married to someone else. L.Z.L. testified he had taken steps to provide a home for the child, such as purchasing a crib, clothes, blanket, and car seat.

---

[1] The court found the mother, R.M., had consented to termination of her parental rights. The court also terminated the parental rights of the legal father, M.P. Neither R.M. nor M.P. has appealed the termination order.

Section 600A.8(3)(a) provides a parent is deemed to have abandoned a child:

(1) If the child is less than six months of age when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent does all of the following:

(a) Demonstrates a willingness to assume custody of the child rather than merely objecting to the termination of parental rights.

(b) Takes prompt action to establish a parental relationship with the child.

(c) Demonstrates, through actions, a commitment to the child.

(2) In determining whether the requirements of this paragraph are met, the court may consider all of the following:

(a) The fitness and ability of the parent in personally assuming custody of the child, including a personal and financial commitment which is timely demonstrated.

(b) Whether efforts made by the parent in personally assuming custody of the child are substantial enough to evince a settled purpose to personally assume all parental duties.

(c) With regard to a putative father, whether the putative father publicly acknowledged paternity or held himself out to be the father of the child during the six continuing months immediately prior to the termination proceeding.

(d) With regard to a putative father, whether the putative father paid a fair and reasonable sum, in accordance with the putative father's means, for medical, hospital, and nursing expenses incurred in connection with the mother's pregnancy or with the birth of the child, or whether the putative father demonstrated emotional support as evidenced by the putative father's conduct toward the mother.

(e) Any measures taken by the parent to establish legal responsibility for the child.

(f) Any other factors evincing a commitment to the child.

The legislature has defined the phrase "to abandon a minor child" to mean

a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19). "Parental responsibility demands 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (citation omitted).

While L.Z.L. testified he was willing to assume custody of the child, he had taken very few steps to establish a parental relationship with the child or demonstrate a commitment to the child. *See* Iowa Code § 600A.8(3)(a)(1)(a)–(c). After Buckmeier became the child's custodian on July 20, 2015, he had no contact with the child and made no inquiries to Buckmeier about the child. L.Z.L. did not ask about the child's health problems or find out what he would need to do to properly care for the child. We do not find credible L.Z.L.'s statement Buckmeier prevented him from having contact with the child.

The CINA proceedings concerning L.Z.L.'s other children brought into question his fitness and ability to personally assume custody of the child. *See id.* § 600A.8(3)(a)(2)(a). L.Z.L.'s efforts were not "substantial enough to evince a settled purpose to personally assume all parental duties." *See id.* § 600A.8(3)(a)(2)(b). Additionally, L.Z.L. paid no medical expenses during the mother's pregnancy or after the birth of the child. *See id.* § 600A.8(3)(a)(2)(d). At the time of the termination hearing, about three months after the child was born, L.Z.L. had not taken any steps to establish paternity of the child. *See id.* § 600A.8(3)(a)(2)(e). We agree with the juvenile court's assessment the elements of abandonment under section 600A.8(3)(a) have been met.

**IV.** **Best Interests**

Our paramount consideration in termination proceedings under chapter 600A is the best interests of the child. Iowa Code § 600A.1. The statute provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

*Id.*

We find it is in the child's best interests to terminate the parental rights of L.Z.L. The juvenile court found, "Neither parent is able to provide for this child. Neither parent is in a position to take the child to a home at this point." The court stated L.Z.L. "has done very little, if anything, to place himself in a parental position or to convince the court that placing this child with him would give her any type of positive life."

We affirm the decision of the juvenile court.

**AFFIRMED.**