**IN THE COURT OF APPEALS OF IOWA**

No. 21-1336
Filed March 30, 2022

**IN THE INTEREST OF W.M. and K.M.,**
**Minor Children,**

**T.T., Mother,**
        Petitioner-Appellee,

**W.M., Father,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        A father appeals the termination of his parental rights to his children.

**AFFIRMED.**


        Jonathan M. Causey of Causey & Ye Law, P.L.L.C., Des Moines, for

appellant.

        Jessica J. Chandler of Chandler Law Office, Windsor Heights, for appellee.

        Chira L. Corwin of Corwin Law Firm, Des Moines, attorney and guardian ad

litem for minor children.


        Considered by May, P.J., and Schumacher and Badding, JJ.

**MAY, Presiding Judge.**

The juvenile court terminated the father's parental rights to his children, W.N.M. and K.M.M., in a private termination case instituted by their mother. On appeal, the father argues (1) the mother failed to establish abandonment under Iowa Code section 600A.8(3)(b) (2021), (2) the father contributed to support the children within his means, and (3) termination was not in the best interests of the children. We affirm.

**I. Background Facts and Proceedings**

W.N.M. was born in 2009. Two years later, K.M.M. was born in 2011. In 2012, the mother and father divorced. The parties stipulated to joint legal custody, physical care with the mother, and visitation for the father. The parties also agreed the father would pay $10 per month in child support. The court's decree adopted the parties' agreements.

Shortly after the divorce, the father moved out of the marital home to stay with family in Michigan. But after he returned to Iowa, the father exercised his visitation "every weekend" with his children. Yet, after a few months, relations between the mother and father deteriorated significantly. In July 2012, the mother obtained a protective order against the father.[1] After that, the parties had little contact for about a year. The father exercised visitation by picking up the children from the mother's parents.

---

[1] The parties disagree about the purpose and propriety of this protective order. The mother testified she dissolved her marriage in part because of domestic violence concerns but was unsure if those concerns prompted the protective order. For his part, the father has no knowledge about the circumstances surrounding the protective order.

When the protective order expired in 2013, both the mother and the father were living separately in Ottumwa, Iowa. The father's visitation with the children proceeded more or less according to plan. But then the father was arrested at the end of 2013. He spent almost the entirety of 2014 incarcerated in Kansas.

Over the next several years, the father moved in between Ottumwa; Springfield, Missouri; and Texas. During this time, the father was again incarcerated for a Kansas probation violation. He was also charged with a number of crimes in both Texas and Iowa between 2015 and 2017. And in 2018, the father pled guilty to eluding and possession of marijuana in Iowa. During this time, the father saw his children sparingly. The last time the father recalls exercising visitation was in March 2017.[2] Shortly after, the father was hospitalized with a life threatening infection. It left him disabled.

The mother moved several times during this period, but she stayed within the city of Ottumwa. The father ultimately moved to Texas in September 2018. He has not returned to Iowa since.

In 2019, the mother moved to Mitchellville, Iowa. She lives there with her children and her partner. Around this time, the father began to reach out to the mother more often about speaking with the children on the phone. The mother did not respond to these messages because, she claimed, the children did not want to talk to the father. When W.N.M. did speak to the father, the father called the conversation "brutal."

---

[2] The mother suggests the last visit actually took place in 2016.

4

In 2020, the mother approached the father about obtaining passports for the children for an international vacation. The father refused to sign the paperwork necessary to obtain passports for the minor children. The father was concerned that the children would leave the country and not return. The mother was never able to obtain passports for the children. As a result, the mother filed this private termination action.

## II. Standard of Review

"We review private termination proceedings de novo." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). "We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations." *Id.*

## III. Analysis

The district court terminated the father's rights under Iowa Code section 600A.8(3)(b) and 600A.8(4). The father argues (1) the mother failed to establish abandonment, (2) the father supported the children within his means, and (3) termination was not in the best interests of the children. We address each argument in turn.

## A. Abandonment

"In a private termination proceeding, the petitioner[] must establish by clear and convincing evidence the statutory ground . . . authorizing the termination of parental rights." *In re T.S.*, No. 15-0443, 2015 WL 5311413, at *1 (Iowa Ct. App. Sept. 10, 2015). Abandonment is one of the statutory grounds permitting termination. *See* Iowa Code § 600A.8(3). Section 600A.8(3)(b) provides,

> [A] parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

On appeal, the father argues the evidence does not support the juvenile court's finding of abandonment. We disagree. In our de novo review, we conclude the mother has proven by clear and convincing evidence that the father failed to "maintain[] substantial and continuous or repeated contact" with the children as contemplated by section 600A.8(3)(b). First, the father has not had physical visitation with his children since at least March 2017, more than four years prior to trial. Although the father was hospitalized and subsequently disabled, his attempts to communicate with his children have involved mostly sporadic text messages to the mother. The father did not attempt to facilitate visitation by proposing dates, times, or locations for visits. *See In re D.Y.*, No. 21-0376, 2021 WL 5919049, at *3 (Iowa Ct. App. Dec. 15, 2021) (affirming a finding that generic text messages without follow up did not demonstrate interest in the child). And the father has not been in the State of Iowa since September of 2018. His attempts to reach his children by phone since then have been limited.

The father has been absent in other ways, too. He has never asked the mother about the children's school nor attended parent-teacher conferences. The father has never sent the children birthday cards or presents, even when he knew the children's address. And the father has not regularly sent holiday gifts to the children.

The father explains his absence by alleging the mother has prevented him from making contact with the children. While we agree with the district court that the mother initially had "no real interest in encouraging [the father's] contact with the children," we conclude the mother did not prevent the father from maintaining some minimum contact with his children. Over the nine years between his separation from the mother and trial, the father's efforts to contact the children have been largely sporadic. It is true that, during the first year, the father exercised his weekly visitation with some regularity. But after that, the father did not attempt to exercise his visitation rights with his children, even when he lived mere blocks from them in the same city. So we believe that the mother has established abandonment under section 600A.8(3)(b)(1) and (2).

**B. Financial Support**

Section 600A.8(4) permits the termination of parental rights if "[a] parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause." The district court made the following findings of fact regarding financial support:

> The court also concludes that [the mother] has established grounds for termination based on [the father's] failure to provide financial support without good cause. Despite only being ordered to pay the statutory minimum amount, he stopped making voluntary payments about one year after the decree was entered. The

aforementioned payment record for the children show[s] that [the father] has only made payments (not including income tax offsets) on 11 occasions between May of 2012 and March of 2013, totaling a meager $61.84. His last contribution of a financial nature was approximately four years prior to his disabling injury. On these payment records, the court finds that [the father's] failure to pay child support as ordered was not for good cause.

(Citations and footnotes omitted.)

Following our de novo review of the record, we believe the district court was right. The last voluntary payment made by the father was at least eight years prior to trial. The father notes he wired money to the mother at various times as well. But by his own admission, that was six years prior to trial. And although the father suffered a disabling injury which limited his ability to work in 2017, he provides no explanation for why he did not pay anything to his children for years prior. Taking the record in its entirety, we agree with and adopt the district court's conclusions.

**C. Best Interests**

Finally, the father argues termination is not in the best interests of the children. He focuses on the positive trajectory of his life following his disability, including his recent college graduation, improved job and income prospects, and positive parenting experiences with his other children. The father also notes that his father is personally wealthy and the children could lose potential future inheritance if the father's rights are terminated.

The children's best interests are the "paramount consideration" when determining whether to terminate. Iowa Code § 600A.1(1). Section 600A.1(2) provides:

The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed

the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Following our de novo review, we conclude termination is in the best interests of W.N.M. and K.M.M. *See In re A.C.W.*, No. 18-0287, 2018 WL 4923172, at *3 (Iowa Ct. App. Oct. 10, 2018). The father has not fulfilled financial obligations, demonstrated a continued interest in being present for his children, or maintained a place of importance in his children's lives. And the possibility that the children might someday inherit something from the paternal grandfather is too remote and speculative to preclude termination here. *See In re J.K.N.*, No. 08-2069, 2009 WL 1677000, at *4 (Iowa Ct. App. June 17, 2009). Effectively, the father is a stranger to his children, and his desire to maintain his parental rights comes too late given his lack of demonstrated effort over the past several years. *See In re A.J.*, No. 15-1664, 2016 WL 1697283, at *3 (Iowa Ct. App. Apr. 27, 2016). On the other hand, the mother's partner, who has been a positive presence in W.N.M. and K.M.M.'s lives, seeks to adopt the children. We agree with the district court that the best interests of the children are served by terminating the father's parental rights.

## IV. Conclusion

The district court properly terminated the father's parental rights.

**AFFIRMED.**