# IN THE COURT OF APPEALS OF IOWA

No. 23-1041
Filed June 5, 2024

**IN THE INTEREST OF B.B.,**
**Minor Child,**

**L.S., Mother,**
    Petitioner-Appellee,

**J.W., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

A father appeals the termination of his parental rights under Iowa Code chapter 600A (2023). **AFFIRMED.**

Elizabeth M. Wayne, Parkersburg, for appellant father.

Emilia Edwards of Tollakson Law, PLLC, West Des Moines, for appellee mother.

Kara L. McClure of Bergkamp, Hemphill & McClure, P.C., Adel, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

The mother of a child born in 2015 petitioned to terminate the parental rights of the child's father on the ground of abandonment pursuant to Iowa Code section 600A.8(3)(b) (2023). Termination of parental rights under chapter 600A involves a two-step process of (1) establishing a statutory ground for termination, and (2) proving termination is in the child's best interest. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). Both steps require proof by clear and convincing evidence. *Id.*

The juvenile court found the mother had satisfied both steps and granted her petition. The father appeals, challenging the juvenile court's findings on both steps. Our review is de novo, which means we give weight to the juvenile court's fact findings, especially as to witness credibility, but we are not bound by them. *Id.*

As noted, the mother relied on the statutory ground of abandonment in section 600A.8(3)(b). That section provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b).  Chapter 600A also defines abandoning a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child."  *Id.* § 600A.2(20).  A parent's subjective intent "unsupported by evidence of acts specified in [section 600A.8(3)(b)] . . . , does not preclude a determination that the parent has abandoned the child."  *Id.* § 600A.8(3)(c).

Based on our de novo review, we find that the father has never lived with the child.  He also has not visited the child at least monthly.  Nor has he regularly communicated with the child or with the child's mother as the person having custody of the child.  From the child's birth in 2015 through 2017—the year the father was discharged from the military—the father visited the child only three times.  The father moved back to Iowa in 2017 and lived within a few blocks of the mother and the child, but he made no effort to contact the mother or the child.  In 2020, the father briefly stepped up his efforts to see the child, seeing her about four times between June and August of 2020.  The burst of effort was short-lived, as the father then went approximately a year with no contact.  When he did get back in touch, the communication was limited to asking the mother to allow phone contact at night after the child was in bed and sending a text to the mother wishing her and the child a happy Thanksgiving.  Even after the father filed a petition seeking visitation in 2022, he made no meaningful attempts to see or contact the child.  In sum, the father had physically seen the child about seven times by the termination hearing, which was held when the child was seven years old.

The father sought to explain his absence from the child's life by testifying he has spent the last several years trying to get his feet under him and did not have the financial means to visit with his child. But the evidence indicates he was simply unwilling to make the effort. Although he lived out of state for the first few years of the child's life, he moved back to Iowa in 2017 but still made little to no effort to visit the child. On the rare occasions when he has visited the child, the visits have been short, lasting no more than two hours, and typically lasting less than an hour. Even when the mother brought the child on a vacation with the father and his extended family, he had only limited contact with the child. He also has not asked the mother to bring the child to visit him or tried to meet the mother and child halfway between their homes.[1]

Even if we agreed that the father's failure to regularly visit with the child could be excused by lack of means, the mother still proved that he did not regularly communicate with the child or the mother. The father's contact with the child has been sporadic at best. The father's fits-and-starts pattern of communicating with the child does not amount to the regular communication required by the statute. *See In re J.H.*, No. 16-2076, 2017 WL 1735912, at *3 (Iowa Ct. App. May 3, 2017) (finding mother's communication was insufficient when she would go thirty to ninety days at a time without contacting the child or father).

The father also seeks to explain his lack of involvement with the child by arguing that contacting the mother about the child was difficult because it strained

---

[1] While the father and mother lived only a few blocks apart when the father first moved back to Iowa, the mother and her current husband later moved to Waukee and the father moved to Manchester.

the relationship between the mother and her then husband. However, he does not claim that the mother prevented him from contacting the child because of it. In fact, he admits that his communication with the mother and child did not improve after the mother divorced her then husband. While the father suggests that the mother interfered with his ability to interact with the child, his suggestion is rebutted by the record. The record shows that the mother was generally easy to contact and allowed the father to visit when he asked. The limited restrictions the mother placed on visitation were reasonable. *See In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) ("The reasonable requests by the mother cannot be blamed for the father failing . . . to have any contact with his child . . . ."). Contrary to the father's suggestion that the mother hampered his visitation or communication with the child, the evidence shows she has been open to facilitating a relationship between the father and the child and has actively encouraged the relationship.

Following our de novo review, we conclude the father had the ability to visit the child at least monthly and did not do so. He also did not regularly communicate with the child or with the mother about the child. We therefore find that the mother proved the statutory ground of abandonment under section 600A.8(3)(b).

We also conclude that the mother proved that termination of the father's parental rights is in the child's best interests. "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). Our considerations include "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in

the child's life." *Id.* We also look to the best-interest framework in Iowa Code chapter 232. *B.H.A.*, 938 N.W.2d at 232. Under that framework we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

We give credit to the father for his financial support of the child and note that, at the time of the termination hearing, the father was current on his child support obligation through wage assignment. But financial support is not enough by itself. The Code requires a parent to make a genuine effort to communicate with the child and maintain a place of importance in the child's life. *Id.* § 600A.1(2). The father has not met that obligation. His interest in the child seems to come and go, with short periods of contact followed by long periods of absence. He has had the ability and opportunity to have regular visits and communication with the child, but he has not seized the opportunity. The child knows he is her biological father but doesn't have a close relationship with him. In contrast, the mother has provided for all the child's needs, as has her current husband. The husband has been in the child's life since 2021, has a fatherly relationship with the child, and is eager to adopt her. *See In re Q.G.*, 911 N.W.2d 761, 772 (Iowa 2018) (factoring step-father's desire to adopt the child into best-interests analysis). In short, the mother has proved that terminating the father's parental rights is in the child's best interest.

We conclude the mother has satisfied both steps in the two-step analysis for termination of parental rights under chapter 600A. As a result, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**