# IN THE COURT OF APPEALS OF IOWA

No. 24-0110
Filed July 24, 2024

IN THE INTEREST OF D.H.,
Minor Child,

L.H., Mother,
    Petitioner-Appellee,

N.H., Father,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brendan Greiner, Judge.

A father appeals the private termination of his parental rights. **AFFIRMED.**

Karmen R. Anderson of Anderson & Taylor, PLLC, Des Moines, for appellant father.

Tracy A. Eaton of Miller, Zimmerman & Evans, P.L.C., Des Moines, for appellee mother.

Rachel Nicole Leigh of Custody Matter, L.L.C., Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father appeals the private termination of his parental rights under Iowa Code section 600A.8 (2023). Because we conclude the grounds for termination were met, we affirm.

## I.       Background Facts and Proceedings

The parents were married in 2018, and their child, D.H., was born in 2019. The parents separated in June or July 2021, and the mother and the child moved to an apartment. The father exercised visitation sporadically for the next few months until December 2021, when a visitation exchange resulted in criminal charges against him. That was the last contact the father had with the child.

In 2023, the mother filed a petition to terminate the father's parental rights pursuant to Iowa Code section 600A.8, based on the father's consent. The termination petition was filed in conjunction with the parties' pending dissolution proceeding, in which they stipulated the mother would have sole legal custody and physical care of the child. The father "agreed it was in [the child]'s best interest for [him] to not have any parenting time." The district court entered a dissolution decree adopting the parties' stipulation.

The termination hearing was set for October 18. On October 17, the guardian ad litem filed a motion for continuance, stating in part, "Yesterday at 6:15 p.m., the undersigned was informed during a phone conversation with the natural father that he no longer wishes to have his parental rights terminated." The court granted the guardian ad litem's motion as well as the mother's motion to amend her petition "to include the abandonment statutory basis for termination of parental rights."

The termination hearing took place over two days in November. The father testified he "change[d] [his] mind" about consenting to termination "[w]ith more sobriety." He testified the mother "wouldn't let [him] see" the child, which triggered him to drink. He stated he attempted to exercise supervised visitation pursuant to a temporary parenting plan ordered by the court, but the mother "didn't show up." After that, the father threatened to kill the mother, was convicted of several crimes, and cut off all contact with the mother.

The mother testified she was worried about the father having contact with the child due to "his aggression and not being sober." She also expressed concerns with "reintroduc[ing]" the father into the child's "life right now," stating, "I know that he's done the sober thing and is doing the sober thing, but I guarantee that we would see you all back here in the next five years for the same thing." The mother stated her boyfriend had been in the child's life "for a couple years now," and he had "talked about adopting" the child if they married. She testified she had not "heard [the child] talk about [the father] in about two years." The guardian ad litem recommended termination of the father's parental rights.

The district court entered an order terminating the father's parental rights, noting in part:

> [The father] has struggled with alcohol but was seven months sober at the time of the hearing. He has had two [operating-while-intoxicated] convictions, the most recent from August 2023 where he served 45 days in jail, followed by 50 days of in-patient treatment. There are a handful of violent offences in recent years as well. This year he was diagnosed with PTSD stemming from his time in the Navy. He testified he is in sober living with another individual. The court has no independent information about this roommate.
> . . . .
> Coparenting has been a struggle since [the mother] and [the father] broke up in the summer of 2021. Like many couples today,

this couple sent inflammatory and accusatory texts to each other that demonstrate a lack of insight as to how their relationship impacts their child's wellbeing. There is currently a no contact order against [the father]. Apparently, [the father] attempted to use the Ankeny Police Department to facilitate exchanges with [the mother], but the attempts ended there. He never asked the district court to modify or enforce visitation.

Despite the improvement [the father] has made in the past several months in employment and sobriety, this court cannot fathom how [the father] has gone two years without seeing [the child]—now half of [the child]'s life. As recently as summer of 2023, [the father] was prepared to have his rights terminated. The court was not presented with any information about modification to the no contact order to allow for communication regarding child exchanges. The court was not presented with any attempts for court intervention to compel [the mother] to provide visits over these past two years. In short, [the father] has not demonstrated continued interest in [the child], or demonstrated genuine effort to maintain communication with [the child], or demonstrated the establishment and maintenance of a place of importance in [the child]'s life.

[The father] believes it was in [the child]'s best interests to refrain from contacting her. This court disagrees. Contact and visitation with [the child], in a safe, supervised environment, would have established a minimal, cursory relationship with her. Today, there is no relationship. If [the father] were to enter her life right now, he would do so as a complete stranger. The time for being a part of [the child]'s life is over.

The court finds by clear and convincing evidence that [the mother] has met the grounds for termination of the parental rights of [the father] as legal parent of [the child]. The court finds by clear and convincing evidence that [the father] has abandoned [the child] within the meaning and scope of Iowa Code § 600A.8(3)(b).

The father appeals.

## II.    Standard of Review

We review private termination proceedings under chapter 600A de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *Id.* (citation omitted); *see* Iowa R. App. P. 6.904(3)(g).

### III. Analysis

Termination of parental rights under chapter 600A involves a two-step process of (1) establishing a statutory ground for termination, and (2) proving termination is in the child's best interest. *Id.* Both steps require proof by clear and convincing evidence, *see id.*, and the best interests of the child is the paramount consideration, *see* Iowa Code § 600A.1.

The district court terminated the father's parental rights pursuant to Iowa Code section 600A.8(3)(b), which provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Chapter 600A also defines abandoning a minor child as "reject[ing] the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* § 600A.2(20). A parent's subjective intent "unsupported by evidence of acts specified in [section 600A.8(3)(b)] . . . , does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

The father last saw the child in December 2021. At that time, the father threw a rock on the hood of the mother's car while she was holding the child in her arms. He was arrested for the incident, and he later pled guilty to fourth-degree criminal mischief. A temporary order was entered providing the father supervised visitation.

In spring 2022, the father tried to exercise visitation "several times" by going to the police station to see the child, but the mother "didn't show up." The father testified, "So I kind of gave up and went back to drinking." He also stated he "blocked" the mother's phone number. He stated he did not "reach out to [his] counsel to try to facilitate parenting time" or "file any documents with the Court because [the mother] was not following the temporary parenting plan," agreeing, "No. I handled it the wrong way." When asked if the father made any other attempts to exercise visitation, he responded, "No. I just drank." The father testified he wrote letters to the child but did not send them.

On appeal, the father claims the mother "obstruct[ed]" him from having contact with the child. *But see In re D.J.*, No. 17-0923, 2017 WL 4570488, at *4 (Iowa Ct. App. Oct. 11, 2017) (finding it reasonable for a parent to stop visitation between the children and the non-custodial parent when the non-custodial parent is abusing drugs and there is no evidence they are seeking treatment). The father further claims his inability to see the child was "a triggering factor in his struggle with sobriety." *But see In re G.A.,* 826 N.W.2d 125, 129 (Iowa Ct. App. 2012) ("The father must take personal responsibility for his own wrongful and criminal acts, and cannot use such acts as a justification for his lack of relationship with the child.").

And the father testified "[n]othing prevent[ed]" him from contacting the mother "after that second temporary parenting plan." Rather, he felt due to "all the resentments in the past of each other . . . it's probably best that we gave each other space for a while." By July 2023, the father still "agreed it was in [the child]'s best interest for [him] to not have any parenting time." According to the father, the only contact he made with the mother "related to [the child]" since June 2022 took place "[l]ast week." The father explained "the longer I have sobriety, the better I can see clearly" to decide "I wanted to see [the child] again"; "I wanted to try to work with [the mother]." Unfortunately, the father waited until 2023 to work towards sobriety and bettering himself. *See In re E.E.*, No. 21-0034, 2021 WL 3907807, at *3 (Iowa Ct. App. Sept. 1, 2021) (noting the father's "attempts to shield a child from addiction 'do[es] not justify or overcome his failure to maintain a relationship with his child'" (quoting *In re C.M.*, No. 18-1901, 2019 WL 3315891, at *2 (Iowa Ct. App. July 24, 2019)). By the time of the termination hearing, the child was almost four years old, and the father acknowledged "[s]he probably doesn't remember" who he was. Upon our de novo review, we conclude the mother proved the statutory ground of abandonment under section 600A.8(3)(b).[1] We affirm.

**AFFIRMED.**

---

[1] Because we affirm the district court's determination that the father abandoned the child under Iowa Code 600A.8(b)(1), (2), and (3), we do not address financial contribution. And the father does not challenge the finding that termination is in the child's best interests. *See In re D.W.*, No. 20-0772, 2021 WL 610186, at *4 (Iowa Ct. App. Feb. 17, 2021) ("In reaching a best-interests determination, we borrow from our best-interest framework outlined in chapter 232."). We therefore limit our analysis to the contested step. *See In re R.M.*, No. 24-0143, 2024 WL 1297678, at *3 (Iowa Ct. App. Mar. 27, 2024, *accord In re J.F.*, No. 19-1647, 2020 WL 110404, at *1 (Iowa Ct. App. Jan. 9, 2020) ("[W]hen, as here, the parent's claims only relate to one step in our analysis, we only address that step.").