# IN THE COURT OF APPEALS OF IOWA

No. 23-2093
Filed September 18, 2024

**IN THE INTEREST OF A.C.P.,**
**Minor Child,**

**M.C., Mother,**
    Petitioner-Appellee,

**A.C., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Crawford County, Steven J. Andreasen, Judge.

A father appeals the termination of his parental rights in a private termination action. **AFFIRMED**.

Grant M. Rodgers of Higgins Law Firm, P.L.L.C., West Des Moines, for appellant.

Benjamin D. Bergmann and Nathan Sandbothe of Parrish Kruidenier, L.L.P., Des Moines, for appellee.

Penny Reimer of Reimer Mediation & Law, Cumming, attorney for minor child.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

The father appeals the termination of his parental rights to A.C.P., born in February 2015, in a private termination action. Although the father materially contributed to the well-being of both the mother and child during the mother's pregnancy, he has not maintained substantial and continuous or repeated contact with A.C.P. since the father's incarceration, which began within a couple months of the child's birth. In the father's absence, A.C.P. has maintained a close and loving relationship with the mother's new partner, whom the child refers to as "Dad." Based on the lack of a relationship between the father and the child and a consensus of learned parties that reintroduction of the child to the father would produce significant emotional distress to the child, we find it is not in the best interests of the child for the father to maintain his parental rights. After reviewing the facts and proceedings de novo, we affirm the decision of the district court.

**I. Background Facts and Proceedings.**

The mother and father married in April 2014. The mother gave birth to A.C.P. the following February after a high-risk pregnancy. While the father was involved and provided financial support for the family both during the mother's pregnancy and immediately following the child's birth, that support ended less than two months later when the father was arrested.

The father was convicted of federal drug crimes—a result of running a drug enterprise from the parents' joint apartment. The mother reported that the father regularly threatened individuals with violence as part of the enterprise. He was sentenced to a term of 200 months with a mandatory minimum term of 120 months; with an expected release date in November of 2028. Following his release, he is

expected to be deported to his home country of Mexico. Because the mother's knowledge of and involvement in the drug enterprise, she was also arrested. The federal court sentenced her to one year and one day of federal prison time, of which she served "about eight months." She has since completed a term of supervised release without incident.

After incarceration, the father failed to contribute funds to the care of the child, although he earned prison wages for some of the time.[1] According to both parties, the father sent one gift, a hat, to the child early in his incarceration, but has not sent gifts or cards since that time. The father maintained he sent "many" letters to the child, but the mother denied receiving any written communication from the father in prison and the father admitted that he never received a reply to his letters. He produced no copies of the letters. The district court found that the mother was more credible on the issue of whether letters were sent to the child.

During his approximately eight years of incarceration before the termination trial, the father estimated that he spoke to the child at most eight times for five or ten minutes a time. The father testified that several of these alleged calls happened without the mother's knowledge while the child was at his godmother's home, who acted as a babysitter for the child on several occasions. Yet, as of the March 2023 termination trial, by the father's own admission, he had not spoken to his child in the last "couple years." Throughout this same period of time, the father

---

[1] The father is currently in a maximum-security facility that prohibits prison employment. He previously resided in a minimum-security facility and was employed in the kitchen.

maintained communication and a relationship with his girlfriend, his siblings, his mother, and his godmother.

At trial, the mother admitted she "stopped" the calls from the father when he became more interested in the mother's new partner than communicating with the child. To explain her actions, the mother testified the father would call to inquire about the status of her new relationship, seemingly apathetic to the status of his child. In short order, the inquiries into the mother's new relationship escalated to threatening statements, texts, and calls. The threats culminated in an assault, when a relative or acquaintance of the father approached the mother's partner and hit him in the face. The assaulter stated that the father sent him. The father denied that he orchestrated the assault and argued he called the perpetrator after the assault to demand they stay away from the mother, her partner, and their family. Prior to the assault, the mother claimed she did not prohibit the father from communicating with the child, but did make it clear that if the threats or inquiries into her relationship continued, the calls would have to stop. Still, regardless of restrictions, the father did not heed them or resume calls to his child.

**II. Discussion.**

We review chapter 600A termination proceedings de novo. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We defer to the trial court's findings of fact, although we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993). "[O]ur primary concern in termination proceedings is the best interests of the child." *G.A.*, 826 N.W.2d at 127.

In a private termination proceeding under Iowa Code chapter 600A (2020), termination of parental rights involves a two-step process. *In re B.H.A.*, 938

N.W.2d 227, 232 (Iowa 2020). The mother, as the party seeking termination, has the burden to first prove by clear and convincing evidence at least one of the grounds for termination under section 600A.8. *Id.* "Once the court has found a statutory ground for termination under a chapter 600A termination, the court must further determine whether the termination is in the best interest of the child." *In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010).

Abandonment is one of the eleven enumerated grounds for termination of parental rights. Iowa Code § 600A.8. If the child is at least six months old at the time of the termination hearing, a parent has abandoned their child a unless the parent has maintained "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means." Iowa Code § 600A.8(3)(b). "Under section 600A.8(3)(b), the threshold element of 'substantial and continuous or repeated contact' is economic contributions." *In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015). The parent must also maintain "[r]egular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child." Iowa Code § 600A.8(3)(b)(2). Incarceration is not an adequate justification for the lack of a relationship with the child. *M.M.S.*, 502 N.W.2d at 8.

Here, the mother must also prove by clear and convincing evidence that termination is in the best interests of the child. *E.g.*, *B.H.A.*, 938 N.W.2d at 232. Section 600A.1 sheds light on "best interest," including for the purposes of private termination proceedings:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1(2). We also borrow "from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232.

On appeal, the father contests both the district court's conclusions that he abandoned the child and that termination of his parental rights is in the child's best interests. We consider each of his arguments in turn.

**A. Grounds for Termination.**

The father challenges the district court's finding of abandonment under section 600A.8(3)(b), asserting his support of the mother during her pregnancy and of the family immediately following the child's birth "should not be overlooked." While the record evidence indicates the father was hands on and a loving father at the very beginning of the child's life, it was short-lived. Since his arrest, he has provided no financial contribution and very little communication in the approximately eight years between his incarceration and the time of the termination trial. Those early months of affirmatively assuming the duties of a parent do not overcome the years of inattention and noninvolvement that followed. It is also worth noting that while the father failed to maintain regular communication with the child, he regularly communicated with his siblings, mother, godmother, and girlfriend from prison. While he claimed he wrote "many" letters to the child, the district court specifically found credible the mother's testimony "that she

received only one letter or gift from [the father] for the child." We have no reason to disregard this credibility finding. While we are not bound by them, we ordinarily defer to the district court's credibility findings given the court's "unique opportunity to observe witnesses firsthand." *See State v. Boone*, 989 N.W.2d 645, 651–52 (Iowa 2023).

Given this history, the father, even by his own admission, has not maintained substantial and continuous contact with the child based upon his failure to maintain any regular communication with the child and by his failure to contribute to the support of the child when he could have provided assistance. *See* Iowa Code § 600A.8(3)(b)(2). For the reasons detailed above, we find that the father abandoned his child pursuant to section 600A.8(3)(b).

### B. Best Interests of the Child

As the petitioner, the mother must prove that termination of parental rights is in the best interests of her child. Because of his life choices, there is a lack of any relationship between the father and the child. The father's behavior of threatening the mother and her partner does not bode well for a healthy family atmosphere for the child. And, the father will not be released for several more years and, when he is, he will likely be deported so the child would still lack the benefit of a healthy relationship with the father for some time.

In reaching this conclusion, we rely on testimony from the child's caretakers, who know the child best and who all agreed that the child only knows the mother's partner as "Dad." Both the mother and the child's guardian ad litem asserted that the reintroduction of relationship between the child and the father would require therapy for the child to address the inevitable emotional effects of reintroduction.

The child has no relationship with the father and the father admitted that if he were to talk to the child "all at once that I am his father, [the child] is going to be scared." Thus, in our best-interests analysis, we consider many factors including "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," "the child's emotional and psychological health," and "the closeness of the parent–child bond." *See B.H.A.*, 938 N.W.2d at 232. In doing so, we find it is in the best interests of the child to terminate the parental rights of the father as reintroduction is not in the best interests of the child.

**III. Conclusion.**

Because the mother proved the father abandoned the child pursuant to section 600A.8(3)(b) and termination of the father's rights is in the child's best interests, we affirm the decision of the district court.

**AFFIRMED.**