# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0148
Filed January 7, 2026

————————

**In the Interest of C.P., M.P., and L.P., Minor Children,**

**J.H., Mother,**
Petitioner-Appellee,

**E.P., Father,**
Respondent-Appellant.

————————

Appeal from the Iowa District Court for Cherokee County,
The Honorable David C. Larson, Judge.

————————

**AFFIRMED**

————————

Michael H. Johnson of Johnson Law Firm, PC, Spirit Lake, attorney for
appellant father.

Lisa K. Mazurek of Law Office of Lisa K. Mazurek, P.L.C., Cherokee,
attorney for appellee mother.

Ryan T. Gaskins of Boerner & Goldsmith Law Firm, P.C., Ida Grove,
attorney and guardian ad litem for minor children.

————————

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

The father appeals the private termination of his parental rights to three children. On our de novo review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Around 2012, the mother and father married. They had three[1] children together: C.P., M.P., and L.P., born in 2011, 2012, and 2015, respectively. The mother and father had a troubled relationship and lived separately on numerous occasions. They permanently separated in early 2018.

Initially, the children lived with their father for five months. But the father had a history of substance abuse, and the mother found a lighter and pipe in his house while the children were staying with him. That day, the children moved in with the mother and her now-husband, and the father admitted himself into a rehabilitation program. The mother reported the incident to law enforcement, and the Iowa Department of Health and Human Services (HHS) became involved with the family.

In fall 2018, HHS launched a child abuse assessment resulting in a founded report against the father for exposing the children to dangerous substances. And in October, the children were adjudicated as children in need of assistance (CINAs) and placed in the mother's custody. The father was granted visitation subject to the discretion of HHS and the children's attorney and guardian ad litem (GAL). The father fully exercised his visitation rights throughout the CINA proceedings.

The mother and father formalized their separation in a dissolution of marriage decree in late 2019. The court granted the father visits at the

---

[1] A fourth child, biologically unrelated to the father, is not at issue.

discretion of the mother dependent on his sobriety. Between 2020 and 2022, the father's visits became sporadic. In fall 2022, the father petitioned for, and the court granted, visits on alternating Saturdays between 10:00 a.m. and 4:00 p.m., conditioned on supervision by the father's sister or a professional.

Despite obtaining a definite visitation period, the father continued to visit sporadically. In November 2023, the father's last visit ended in an argument with his sister over her supervisory role in the presence of the children, with his sister refusing to continue to supervise. The mother maintained that, because of the argument, the visit was abusive and refused to allow the sister to supervise further visits out of concern for the children's wellbeing. The father contacted professional supervision services, and the mother completed the required paperwork allowing them to oversee further visits, but the father claimed the supervision services never responded.

Over the month following the last visit, the father did not communicate with the children. He attempted to call the children in 2024, but the telephone conversations were sparse. The mother designated the father's call-time between 4:00 p.m. and 6:00 p.m. every Saturday. But she later declined about a dozen of the father's calls because of schedule conflicts. When the children were available to take calls, they would often tell the father they did not want to talk with him. The mother testified that the children made this decision on their own, which the GAL corroborated through independent interviews. The children refer to the mother's husband as "dad," and he plans to adopt the three children at issue if the father's parental rights are terminated.

The mother and her husband both testified that the children experienced psychological distress whenever the father re-entered their lives. Two of the children were diagnosed with post-traumatic stress disorder

3

(PTSD) from the father's prior actions. One of the children's therapists said the recommended therapeutic treatment would be ineffective unless the child ceased contact with the father. Since contact between the father and children has declined, the mother and husband have perceived emotional growth in all three children, as well as significant improvements in academic performance for one of them.

The father owes $21,033.67 in late child support and hasn't voluntarily made a payment since 2023. In May 2024, the father's wages were garnished twice during a brief stint of employment; he departed from his position shortly afterward.[2] The father claimed he was impoverished and unable to make contributions because of his inability to maintain employment.

In October, the father was jailed for harassment in the third degree and interference with official acts; he was released a month later but was again incarcerated within the week.[3] He admitted to using methamphetamine during the brief time he was out of jail. And he remained incarcerated up to the trial in this case.

At trial, the juvenile court terminated the father's parental rights to the three contested children under Iowa Code section 600A.8(3)(b), (4) (2023). The father appeals.

---

[2] It is unclear from the record exactly how the father's employment ended. The mother asserts he quit. But the father vaguely testified he was unemployed because he was too honest with his boss about his substance use. He did not elaborate further.

[3] The record omits the reason for the father's second incarceration. While he testified about his criminal history and a prior eluding charge at trial, the father interrupted the inquiry with coarse remarks—to put it mildly.

## STANDARD OF REVIEW

We review private termination proceedings de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). While we are not bound by the district court's findings of fact, they may inform our analysis and are entitled to weight, "especially when considering credibility of witnesses." *Id.* (citation omitted). When interpreting chapter 600A, the children's best interests "shall be the paramount consideration," but the parents' interests "shall be given due consideration." Iowa Code § 600A.1(1).

## DISCUSSION

"Private termination proceedings under Iowa Code chapter 600A are a two-step process." *B.H.A.*, 938 N.W.2d at 232. First, the petitioner must "prove by clear and convincing evidence the grounds for ordering termination of parental rights." *Id.* The petitioner must also prove by clear and convincing evidence termination is in the children's best interests. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record. *See* Iowa Code § 600A.8; *In re B.O.*, No. 23-0330, 2023 WL 6620516, at *3–4 (Iowa Ct. App. Oct. 11, 2023).

The father raises three issues on appeal: whether he abandoned the children; whether he failed to pay child support without good cause; and whether termination is in the best interests of the children. We consider each.

### I. Abandonment

The father first argues he did not abandon the children within the meaning of chapter 600A. To establish abandonment, the mother had to present clear and convincing evidence "the parent for whom termination is sought has failed to maintain 'substantial and continuous or repeated contact

with the child.'" *In re G.A.*, 826 N.W.2d 125, 129 (Iowa Ct. App. 2012) (quoting Iowa Code § 600A.8(3)(b)). There is both a cash and contact component to this analysis. *See* Iowa Code § 600A.8(3)(b). The cash component is established by financially contributing to the child in a reasonable amount consistent with the parent's means. *Id.* The contact component can be shown by

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child[; or]

> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

*Id.* § 600A.8(3)(b)(1)–(2). The petitioner needed only to establish one of these components to prevail. *In re J.V.*, 13 N.W.3d 595, 604 (Iowa 2024).

Beginning with the cash component, the father contends he made significant monetary contributions. Since 2019, he has paid $51,314.74 in child support, including garnishments. But the father was also behind $21,033.67 at the time of termination. In the prior year, his only contributions were garnishments in May, totaling $541.19. And the father departed his job shortly after his checks were garnished. He said he had been "living in poverty," but did not provide concrete reasons as to why he was unemployed.

The juvenile court found, and we agree, the father can work but remains unemployed because of his ongoing struggle with methamphetamine addiction. As the juvenile court observed: "[the father] has been to inpatient treatment five times, but he continues to use methamphetamine, with his last reported use being approximately two months [before trial]." While we are not unsympathetic to the plight of drug addiction, the father could have voluntarily contributed *something* to the children in the year before trial; he

6

instead prioritized methamphetamine. Because of his continued drug use, ability to work, and refusal to make any voluntary child support payments for more than a year, we reject the father's contention that he financially contributed to the children in a reasonable amount consistent with his means. *Cf. In re M.B.*, No. 22-1915, 2023 WL 7391793, at *5 (Iowa Ct. App. Nov. 8, 2023) (finding a father failed to contribute a reasonable amount where he was $11,000 behind in child support and had only recently contributed to his child through the garnishment of a stimulus check).

Regarding the contact component, the father does not dispute his failure to maintain monthly visits or contact. Instead, he argues section 600A.8(3)(b)(2) should apply to preclude termination because he argues the mother prevented him from seeing the children. But this argument ignores alternatives available to the father. The mother did not unequivocally refuse the father visits. Rather, she specifically refused to allow the sister to supervise the visits because of the prior visitation incident in 2023. The father still had the option to use professional supervision, and the mother filled out paperwork for those services.

Instead of affirmatively seeking to exercise and enforce his rights, the father attempted to deflect accountability for his inaction. He made no attempt to have his visitation rights enforced by the legal means available to him. Even if the supervision service did not return his calls, the father was not "prevented from [visiting his children] by *the person having lawful custody of the child[ren]*." Iowa Code § 600A.8(3)(b)(1) (emphasis added). We reject the father's argument that the mother prevented him from having monthly contact with the children. *Cf. In re N.B.*, No. 24-0800, 2025 WL 705994, at *2 (Iowa Ct. App. Mar. 5, 2025) (finding a father failed to maintain monthly contact with his child, even when the mother restricted his visitation

rights, where he made "few attempts to arrange visitation, the mother[ had] legitimate concerns based on the father's actions, and the father[] fail[ed] to establish and enforce his rights by the legal means available" (cleaned up)).

Because both the cash and contact components of the abandonment analysis are individually dispositive, there is clear and convincing evidence the father abandoned the children.

## II.   Failure to Pay Child Support Without "Good Cause"

Second, the father challenges whether he had "good cause" for his failure to pay child support. Section 600A.8(4) authorizes termination of parental rights if "[a] parent has been ordered to contribute to the support of the child . . . and has failed to do so without good cause." The father admits to not fulfilling his payment duties but asserts that his impoverishment and involuntarily unemployment constitute good cause.

As discussed, the father provided no explanation for his unemployment other than his drug use. He admitted he did not make any payments, other than what was involuntarily garnished from his checks, since 2023. During the period between his last two incarcerations, with the termination trial imminent, he chose to prioritize using methamphetamine rather than attempting to contribute anything to the children. We agree with the juvenile court that the father's inaction and misplaced priorities make clear he did not have good cause for failing to pay child support. *See B.O.*, 2023 WL 6620516, at *4 (determining a father's prioritization of drug use does not constitute good cause for failing to make child support payments).

## III.   Best Interests

The father last asserts termination is not in the best interests of the children. The children's best interests require the parents to "affirmatively

8

assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). This includes "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* In evaluating best interests in a private termination, we may also consult the statutory best-interest framework in Iowa Code chapter 232. *B.H.A.*, 938 N.W.2d at 232. Applying that framework, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

On our review, we agree with the juvenile court that termination is in the children's best interests. The father has caused various degrees of emotional and mental distress in the children, including PTSD for two of the children. One of the children's therapists said his treatment for PTSD would be ineffective unless the father was removed from his life. The juvenile court credited the mother and her husband's testimony that the children are happier when the father does not intervene in their lives. The children have experienced emotional growth and are performing well in school. And the mother and her husband have provided an environment which has fostered safety and stability for the children. We affirm the juvenile court's conclusion that termination is in the children's best interests.

## DISPOSITION

We affirm termination of the father's parental rights.

**AFFIRMED.**